UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| America Cargo Transport, Inc.<br>    16300 Christensen Road, Suite 300<br>    Seattle, Washington  98188<br><br>              Plaintiff,<br><br>v.<br><br><br>The Honorable Andrew S. Natsios<br>    Administrator United States Agency<br>    for International Development<br>    1300 Pennsylvania Ave, NW<br>    Washington, DC 20523<br><br>           and<br><br>The Honorable John Jamian<br>    Acting Maritime Administrator<br>    Department of Transportation<br>    400 Seventh Street, SW; Rm. 7206<br>    Washington, DC 20590 | C.A. No. |

**COMPLAINT**

This is an action under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and the Declaratory Judgment Act, 28 U.S.C. §2201 et seq., for judicial review of agency action seeking declaratory and injunctive relief and/or vacature of certain actions of the Defendant agencies.

**Jurisdiction and Venue**

This court has jurisdiction over this matter under 5 U.S.C.§ 706, and 28 U.S.C. §§ 1331, 1332 and 2201 and the general maritime jurisdiction.  Venue is lodged with this court

1

under 28 U.S.C. § 1391.

**Parties**

1. America Cargo Transport, Inc. a company organized under the laws the State of Washington, owns US flag vessels operating in the foreign commerce of the United States.

2. Defendant the Honorable Andrew Natsios is the Administrator, United States Agency for International Development ("USAID"). As such, he is charged with, inter alia, administration of the Agricultural Trade Development and Assistance Act of 1954, 7 U.S.C. § 1721 et seq., ("Title II") and the arrangement of ocean transportation for certain grant or aid cargoes consistent with the requirements of the Cargo Preference Act of 1954. He is sued in his official capacity.

3. Defendant John Jamian is the Acting Administrator of the Maritime Administration ("Marad"), a modal unit of the Department of Transportation. Marad is charged with promoting the United States merchant marine and administration of the Cargo Preference Act of 1954. He is sued in his official capacity.

**Background**

4. When the United States procures or contracts for commodities for its own account or furnishes commodities to a foreign nation without provision for reimbursement, the agencies shipping the cargo are required to take such steps as are necessary to assure that privately owned U.S.-flag vessels transport a specified percentage of the tonnage of materials and commodities to the extent such vessels are available at fair and reasonable rates for U.S.-flag commercial vessels "by geographic areas," that is, by country of

destination. For agricultural commodities or products thereof, at least seventy five percent of the gross tonnage must be transported on U.S.-flag commercial vessels. Cargo Preference Act of 1954, 46 U.S.C. app. § 1241; Title IX of the Food Security Act of 1985, 46 U.S.C. app. § 1241e. At least fifty percent of all non-agricultural preference cargoes are required to be transported on privately owned U.S.-flag commercial vessels. 46 U.S.C. app. §§ 1241 et seq.

5. Every department or agency having responsibility under the Cargo Preference Act of 1954 including USAID is required to administer its programs with respect to preference cargoes under guidance issued by Marad. 46 U.S.C. app. § 1241(b)(2). Marad has promulgated rules governing the administration of the program at 46 C.F.R. Part 381. Marad, for example, determines the fairness and reasonableness of rates for U.S.-flag vessels upon request of a shipper agency. 46 C.F.R. § 382.1 et seq.

6. Section 381.5 of 46 C.F.R., entitled "Fix-American-flag Tonnage First" provides in part:

> Each department or agency having responsibility under the Cargo Preference Act of 1954 shall cause each full shipload of cargo subject to said act to be fixed on U.S.-flag vessels prior to any fixture on foreign flag vessels for at least that portion of all preference cargoes required by that Act and the Food Security Act of 1985 to be shipped on U.S.-flag vessels, computed by purchase authorization or other quantitative unit satisfactory to the agency involved and the Maritime Administration, ….

The purpose of the rule is to assure that 75% level of participation for U.S.-flag vessels is reached as nearly as practicable and to assure that U.S.-flag movements are evenly distributed throughout the year.

7. Under Title II agricultural commodities may be donated to recipients usually private humanitarian relief funds or private voluntary organizations ("PVO's") that arrange the transportation and distribution of the relief. The PVO's arrange the ocean transportation of the commodities under the guidance and direction of USAID. In arranging the ocean transportation of these cargoes USAID is governed by the Cargo Preference Act of 1954 and the Marad rules implementing the act to assure the participation of U.S.-flag vessels in the carriage of these cargoes.

8. The Cargo Preference Act of 1954 requirement that at least 75% of the agricultural commodities shipped by agencies be shipped by U.S.-flag vessel "computed separately for dry bulk carriers, dry cargo liners, and tankers" means that the 75% minimum for agricultural commodities must be computed separately for each category of vessel. This provision is intended to assure that the cargoes are fairly distributed among each of the three vessel types.
9. Further, USAID is required to measure compliance with the requirements of the cargo preference laws with respect to the Title II programs on a country-by-country basis. The program year for purposes of measuring the required percentages of agricultural commodities, under Title II runs from October 1 to September 30. 46 U.S.C. app. § 1241f(c)(2). During each program year Marad maintains and publishes a running total of the tonnages by program, by destination, vessel type, i.e., dry bulk carriers, dry cargo liners and tankers, to inform agencies and carriers.
10. In administering Title II, USAID usually purchases specified commodities for delivery at designated U.S. ports. PVO's, through appointed freight forwarders or brokers, solicit ocean rate quotations on parcels of commodities in response to published tenders timed for the period after the commodities are scheduled to arrive at port. The freight solicitation may combine several parcels from several U.S. ports to one or more foreign destination ports. The tenders usually seek rate quotations for U.S.-flag and foreign flag vessels. Based on the offers, USAID will assign certain cargoes to U.S.-flag and others to foreign flag after receipt of the offers. Based on those instructions from USAID, the offers of the ocean carriers are accepted or rejected by the PVO.

**Actions Complained Of**

11. In Invitation for Bid dated July 11, 2005, offers for ocean carriage for approximately 2,009 metric tons of sorghum in 50 kilogram bags moving under Title II from Dubai, UAE to Mombasa, Kenya for Somalia were solicited by freight forwarders on behalf of a PVO, CARE. The tender, which was described as "urgent," required offers to be submitted by fax to CARE's agent's offices by 1100 hours on July 13, 2005.
12. On July 13, 2005, ACT through its broker submitted a timely, responsive offer for service by its U.S.-flag vessel, the THUNDER / LIGHTNING ("Vessel"), to carry the bagged sorghum cargo in accordance with the terms of the tender. This vessel is an integrated tug barge unit that is well suited to carrying of such cargo.
13. On July 13, 2005 and through the date of this submission the Vessel was in Port Rashid, Dubai and available to load cargo immediately and sail directly to the discharge port.
14. Ordinarily, USAID acts on offers for tenders of urgent cargo within two business days. It is very unusual for the agency to withhold action on offers of urgent cargo for more than four days.
15. On July 19, 2005, seven days after the submission of offers on the tender, USAID made a decision to assign the bagged sorghum to a foreign vessel with a schedule that provided an estimated time of arrival later than ACT's Vessel.
16. On or about July 20, 2005, ACT learned that the cargo had been assigned tentatively to a foreign flag vessel with later delivery schedule than the ACT Vessel. Specifically, the ACT Vessel was scheduled to deliver the cargo by direct sailing within 9 days from loading. The foreign vessel awarded the cargo maintained a schedule that would provide for discharge in 12-14 days after at least one or two intermediate port calls.

17. ACT, through its broker, protested the decision to USAID orally and in writing. ACT also applied to Marad for assistance with USAID. Marad too protested the action to USAID and advised USAID that it was out of compliance with the Cargo Preference Act.
18. USAID did not provide any rationale for its action to ACT.
19. The ACT Vessel is considered to be a liner vessel by Marad. If the award to the foreign flag vessel is allowed to stand, the US flag liner participation for the Title II program for cargo to Somalia will fall to 57.6%; the U.S.-flag percentage participation in the Title II program for the current year is approximately 62.3%, both measurably below the required 75%.
20. By letter of July 20, 2005 to USAID, ACT, through its counsel, protested the decision to allocate the bagged sorghum to foreign vessels with slower delivery as not in accordance with the terms of the tender and the Cargo Preference law. USAID advised that it intended to maintain the foreign vessel for the carriage.
21. The THUNDER/ LIGHTNING remains unemployed in the port of Dubai as of this writing. It has been unemployed for more than two weeks. ACT will soon be required to make decisions as to how and where to position the vessel for this cargo or perhaps to lay off the crew by reason of the failure of Defendant USAID to meet the required minimum participation for U.S.-flag vessels under Title II. Thereafter, the crew will be discharged and the vessel will remain idle until such time as it can be suitably employed.

**First Count**

22. The allegations of paragraph nos. 1 through 21 are realleged and reincorporated by reference herein.
23. The decision of Defendant USAID to allocate the bagged sorghum to a foreign vessel was arbitrary, capricious and not in accordance with law and rule because (i) the US flag Vessel was perfectly positioned to carry the cargo; (ii) award to the US flag Vessel provided faster delivery time that the foreign vessel awarded the cargo and therefore best met the urgent requirement of the Invitation; and (iii) the Title II program was below 75% for US flag carriage so use of a foreign vessel would further reduce the US flag participation. Plaintiff is a person adversely affected by the actions complained of herein.

**Second Count**

24. The allegations of paragraph nos. 1 through 17 are realleged and reincorporated by reference herein.
25. The failure of USAID to maintain the percentage of cargoes for U.S.-flag dry cargo liner vessels at or about 75% was arbitrary, capricious, and not in accordance with law or rule. Plaintiff is a person adversely affected by the actions complained of herein.

**Third Count**

26. The allegations of paragraph nos. 1 through 17 are realleged and reincorporated by reference herein.
27. The delay of awards on the tender constituted a departure by USAID from its practice of acting promptly on offers and as such was arbitrary, capricious, and not in accordance with law or rule. Plaintiff is a person adversely affected by the actions complained of

herein.

WHEREFORE Plaintiff request as relief
(i) that the decision of Defendant USAID to allocate cargoes of bagged sorghum moving under Invitation 075 to a foreign flag vessel from Dubai to Mombasa for Somalia be set aside and declared void;
(ii) that any booking, charter or other agreement awarding or approving an award of a transportation contract under Title II Invitation 075 for transportation of bagged sorghum on a foreign flag vessel from Dubai to Mombasa for Somalia be set aside and declared void;
(iii) that Defendant USAID be ordered to accept exclusively U.S.-flag vessel offers with respect to the bagged sorghum moving to Mombasa under Invitation 075;
(iv) that an order be entered against Defendant USAID requiring it to fix U.S.-flag vessels first to maintain at least the minimum 75% U.S.-flag liner participation on a country-by-country basis with respect to all tenders under the Title II programs;
(v) that Defendant USAID be ordered to make up promptly or during the next program year out of the foreign portion of program any shortage in U.S.-flag carriage incurred in the current program year with respect to cargo moving under the Title II program; and
(vi) that such further relief be granted as may be just and proper.

    Respectfully submitted,

    Timothy B. Shea
    DC Bar # 234005
    Nemirow Hu & Shea
    1629 K Street., NW; #600
    Washington, DC  20036
    (202) 835-0300
    (202) 835-0306 fax