UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

_____
American Cargo Transport, Inc.                  )
                                                )
                    Plaintiff,                  )
                                                )
        v.                                      )
                                                )        C.A. No.
                                                )
The Honorable Andrew S. Natsios                 )
        Administrator United States Agency      )
        for International Development            )
        et als.                                 )
                    Defendants.                  )
_____ )


**APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND FOR PRELIMINARY JUNCTION**


        Pursuant to Rule 65, Fed. R. Civ. P. and Local Rule 65.1, American Cargo Transport, Inc.,

Plaintiff herein, requests entry of a temporary restraining order and preliminary

injunction against the Federal defendants.

        American Cargo Transport, Inc. ("ACT"), an  owner and operator of vessels in

the

foreign commerce of the United States seeks relief from this Court for an agency

decision under a grant agreement awarding the carriage of relief cargoes to a foreign

vessel even though (i) ACT's US flag vessel THUNDER/ LIGHTNING ("Vessel") was

perfectly positioned in the foreign port to carry the cargo immediately; (ii) award to the

US flag Vessel provided faster delivery time than the foreign vessel awarded the cargo

and, therefore, best met the urgent requirement of the invitation for bids; and (iii) the

Title II program was below the required 75% level for US flag vessel participation so

use of a foreign vessel would further reduce the US flag participation. Without relief

from this Court, the cargo will be given to a foreign vessel and the cargo opportunity will

be lost to ACT and the US flag forever. ACT's vessel was and remains in the port of

Dubai and available to load the cargo immediately. The foreign vessel is scheduled to

call Dubai later next week and once the cargo is loaded on the vessel, Plaintiff will have

lost the cargo opportunity.

Federal Defendant the Honorable Andrew Natsios, the Administrator, United

States Agency for International Development ("USAID"), is charged with, inter alia,

administration of the Agricultural Trade Development and Assistance Act of 1954, 7

U.S.C. § 1721 et seq., ("Title II") and the arrangement of ocean transportation for certain

grant or aid cargoes consistent with the requirements of the Cargo Preference Act of

1954. Federal Defendant John Jamian is the Acting Administrator of the Maritime

Administration ("Marad"), a modal unit of the Department of Transportation, which is

charged with promoting the United States merchant marine and administration of the

Cargo Preference Act of 1954.

Title II is administered as a grant program so that the actual contracting is done

by private parties under the direction and control of USAID. USAID agrees to pay the

transportation costs to the shipper in its grant agreement so USAID is not the contracting

party. The public competition for award of transportation contracts is carried on in the

commercial manner by private parties with short response times and entirely independent

from government acquisition procedures. The agency decisions under Title II are not

federal procurement actions so they are governed by standard Administrative Procedure

Act review in this court, and not subject to review in the Court of Federal Claims. See

*American President Lines, Ltd. v United States Agency for International Development,*

DDC C.A. No. 02-01878 (HHK) ( denying government motion to dismiss agency action

under Tithe II based on claim of exclusive jurisdiction of the Court of Federal Claims in

28 U.S.C. § 1491(b)(1)).

    In the administration of the Title II program, USAID is required to take such steps

as are necessary to assure that privately owned U.S.-flag vessels transport 75 percent of

the tonnage of materials and commodities "by geographic areas," that is, by country of

destination. Cargo Preference Act of 1954, 46 U.S.C. app. § 1241(b); Title IX of the

Food Security Act of 1985, 46 U.S.C. app. § 1241e. Every department or agency having

responsibility under the Cargo Preference Act of 1954 including USAID is required to

administer its programs with respect to preference cargoes under guidance issued by

Marad. 46 U.S.C. app. § 1241(b)(2). Marad has promulgated rules governing the

administration of the program at 46 C.F.R. Part 381. For example, in Section 381.5 of 46

C.F.R., entitled "Fix-American-flag Tonnage First" Marad provides rules intended to

assure that 75% level of participation for U.S.-flag vessels is maintained through out the

year as nearly as practicable and to assure that U.S.-flag movements are evenly

distributed throughout the year.

    In Invitation No. 075 dated July 11, 2005 offers for ocean carriage for

approximately 2009 metric tons of sorghum in 50 kilogram bags moving under Title II

from Dubai, U.A.E., to Mombasa, Kenya, were solicited by brokers of behalf of a PVO,

CARE. The tender, which was described as "urgent," required offers to be submitted by

fax to Care's agent's offices by 1100 hours on July 13, 2005. See Declaration of O.
Ahmad at Para. 2

On July 13, 2005, ACT through its broker submitted a timely, responsive offer for
service by its U.S.-flag vessel, the THUNDER / LIGHTNING, to carry the bagged
sorghum cargo in accordance with the terms of the tender. This vessel is an integrated tug
barge that is well suited to carrying of such cargo. *Id*. at Para. 3.

On July 13, 2005 and through the date of this submission the Vessel was in Dubai
and available to load cargo immediately and sail directly to the discharge port. *Id*.
Although ordinarily, USAID acts on urgent offers for tenders within two business days,
the agency did nothing with the offers for seven days. On or about July 19, 2009, USAID
made a decision to assign the bagged sorghum to a foreign vessel with a schedule that
provided an estimated time of arrival *later* that ACT's Vessel. *Id*. at Para. 5.

On or about July 20, 2005 ACT learned that the cargo had been assigned
tentatively to a foreign flag vessel with later delivery schedule than the Vessel.
Specifically, the Vessel was scheduled to deliver the cargo by direct sailing within nine
days from loading. The foreign vessel awarded the cargo maintained a schedule that
would provide for discharge in 12 to 14 days. *Id*. at Para. 7.

ACT, through its broker, and later through its counsel protested the decision to
USAID orally and in writing without success. ACT also applies to Marad for assistance
with USAID. Marad too protested the action to USAID and advised USAID that it was
out of compliance with the Cargo Preference Act. *Id*. at Para. 8.

The Vessel is considered to be a liner vessel by Marad. The US flag liner
participation for the Title II program for cargo to Somalia is reported to be 69.4% by

Marad; the U.S. -flag percentage participation in the Title II program for the current year is approximately 64.9%, both measurably below the required 75%. Award to a foreign vessel at this time would reduce US flag participation to Somalia to 57.6%. Further, the cargo preference accounting year, which runs from October 1 to September 30, is nearing its end so the amount of time available to correct deficits is running short. *Id.* at Para. 10.

The THUNDER/LIGHTNING remains unemployed in the port at Dubai as of this writing. It is available to carry the cargo and discharge it sooner than the foreign vessel engaged by USAID. It has been unemployed for more than two weeks. ACT will soon be required to make decisions as to how and where to position the vessel for this cargo or perhaps to lay off the crew by reason of the failure of Defendant USAID to meet the required minimum participation for U.S.-flag vessels under Title II. Thereafter, the crew will be discharged and the vessel will remain idle until such time as it can be suitably employed. *Id.*

**Discussion**

In this case USAID has rejected an offer for prompt service on a US flag vessel in favor of slower service on a foreign vessel in conspicuous disregard for the urgent terms of the invitation for bids and the Cargo Preference law. Moreover, the agency has seemed to delay its action on this urgent movement uncharacteristically in ways that have telescoped the time for parties to assess and react to the decision. Marad, the agency charged with administration of the cargo preference law, has objected to the USAID action as inconsistent with the obligations of the agency under the Cargo Preference law.

Without intervention by this court the cargo opportunity will be lost to ACT and the US flag industry forever. Not only will entry of injunctive relief not prejudice the Federal Defendants but it will vindicate the terms of the invitation and the Cargo Preference law it will speed the delivery of this cargo.

A memorandum of points and authorities is submitted herewith.

Respectfully submitted,

Timothy B. Shea
D.C. Bar # 234005
Nemirow Hu & Shea
1629 K Street, NW #600
Washington, DC 20006