UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CARGO TRANSPORT, INC. | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Action No.: 05-1452 (RBW) ) ECF |
| ANDEW S. NATSIOS, U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT, and JOHN JAMIAN, ACTING MARITIME ADMINISTRATOR, DEPARTMENT OF TRANSPORTATION, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION**

I.  **Introduction**

Plaintiff filed a motion for a temporary restraining order and for a preliminary injunction alleging that Defendants U.S. Agency for International Development (USAID) and the Maritime Administrator (MARAD) violated the Cargo Preference Act, 46 U.S.C. app. § 1241(b), in connection with shipments of emergency food (sorghum) from Dubai, U.A.E., to Somalia (via Mombasa, Kenya).[1]  Under the Cargo Preference Act, seventy-five percent (75%) of food relief shipments should be by American-flag vessels.  Plaintiff alleges that USAID's award of a

---

[1] Sorghum is used to make porridge.  Somalians combine it with lentils and vegetable oil to make it more nutritional.

1

shipment of 2000 metric tons of bagged sorghum to a foreign-flag vessel (rather than Plaintiff's vessel) was arbitrary and capricious and in violation of the Administrative Procedure Act and the Cargo Preference Act. See Compl. at Counts I & II.

Specifically, Plaintiff alleges that the award to a foreign-flag vessel would cause the overall percentage of American-flag vessels' participation in the Title II program for cargo shipment to drop below 75% in violation of the Cargo Preference Act. Compl. at ¶ 19. Plaintiff, however, has a misconception of USAID's decision and will not likely succeed on the merits of this case. More particularly, under the Section 202 of P.L. 480, USAID has complete discretion in transporting emergency food, notwithstanding the Cargo Preference Act. 7 U.S.C. § 1722(a).

But more importantly, just four months earlier, Plaintiff brought a similar case in the Western District of Washington. See American Cargo Transport, Inc. v. United States, No. C05-393JR, slip. op. (Mar. 22, 2005 W.D. Wash.) (Exh. A). In that case, the court denied Plaintiff's application for a preliminary injunction holding that Plaintiff failed to establish an irreparable harm. Id. As in that case, here Plaintiff similarly fails to demonstrate that it will suffer an irreparable injury without injunctive relief. For these reasons, the Court should deny Plaintiff's TRO/PI application.

II.   **Background.**

Under the Agricultural Trade and Development Act of 1954 (Title II), 7 U.S.C. § 1721 et seq., USAID administers a program that provides food aid commodities to meet humanitarian needs in developing countries around the world, including Somalia. Denise Scherl Dec. at ¶ 3 (Exh. B). This program is called Food for Peace Program. Id. Under the Food for Peace Program, USAID collaborates with other non-profit organizations to distribute food around the

world.  Id.

Recently, USAID approved an emergency food aid program for the Cooperative for American Relief Everywhere (CARE) for south central Somalia.  Id. at ¶5.  The total tonnage for this program is 24,240 metric tons of sorghum, lentils, vegetable oil and corn soy blend for CARE to distribute.  Id.   Due to the emergency nature of this program, USAID identified approximately 2,000 tons of sorghum – readily available in Dubai, U.A.E.– for immediate delivery to Somalia, via Mombasa, Kenya.  Id.  CARE then contacted a freight forwarder to solicit bids for transporting the sorghum to Somalia.

Plaintiff American Cargo Transport ("ACT") and other companies offered their services.  See Lauren Landis July 13, 2005 Memo ("Landis Memo") at 1-2 (Exh. C).  Plaintiff offered the service of its US-flag vessel (Thunder/Lighning) with the rate of $298 per metric ton, picking up the cargo from Dubai on July 20, 2005, and delivering it to Mombasa, Kenya, on July 29/30 2005.  Id.  Other American and non-American companies also made offers.  The lowest bid came from Global Container Lines (a foreign-flag vessel), with the rate of $65 per metric ton, picking up on July 23, 2005, for delivery on August 7, 2005.  Id.

There is an extreme discrepancy between the prices that Plaintiff offered and what Global Container Lines offered.  Scherl Decl. at ¶ 9.  Due to this discrepancy, USAID invoked the "notwithstanding" authority provision in Section 202 of P.L. 480, 7 U.S.C. § 1722(a), to override compliance with the cargo preference rules.  Id.  Indeed, "paying the higher price U.S. flag rates would reduce the amount of Title II resources available to the Agency [USAID] and would affect the ability of the program to alleviate the human suffering in this region in this fiscal year."  Id.  See also Landis Memo at 2.  USAID also considered the benefit of Plaintiff's offer to deliver the

3

sorghum to Somalia seven days earlier against the savings gained from using a foreign-flagged vessel, and decided that the benefit does not outweigh the "over all harm to the future of the program by paying [Plaintiff's] exorbitant rates." Id. Using this exemption, USAID awarded the transportation contract to a non-U.S. flagged vessel. See Scherl Decl. ¶¶ 10-13. Not satisfied with USAID's decision, Plaintiff then filed this application for a temporary restraining order late Friday on July 22, 2005.

III. **Governing Principles**

    A. **Standard of Review Under the Administrative Procedure Act (APA)**.

Plaintiff alleges that USAID violated the APA when it awarded the shipment to a foreign-flag vessel. Under the APA, the reviewing court shall not set aside an agency action unless it is found by the court "to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance to law." 5 U.S.C. § 706. "Under this standard, 'there is a presumption in favor of the validity of the administrative action.'" Varicom Int'l v. OPM, 934 F. Supp. 440, 444 (D.D.C. 1996). A reviewing court must ascertain whether the agency decision was based on relevant factors and whether there was clear error of judgment. Id. More importantly, the reviewing court must not substitute its judgment for that of the agency. Id. "A reviewing court will 'uphold a decision less than ideal clarity if the agency's path may be reasonably discerned.'" Dickson v. Sec'y of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995). As discussed below, USAID considered all relevant factors and made a decision that would have long term benefit to its aid program. Its decision was not arbitrary or capricious.

### B.  Standard of Review for Temporary Restraining Order or Preliminary Injunction.

It is settled law that a court may issue interim injunctive relief only when the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable harm if the injunction is not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction.  <u>Int'l Ass'n Machinist & Aeorspace Workers v. Nat'l Mediation Bd.</u>, - - F. Supp. 2d - -, 2005 WL 1437433, at * 2 (June 20, 2005 D.D.C.).  "Interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly."  <u>Id.</u> at *3 (citing <u>Mazurek v. Armstrong</u>, 520 U.S. 968 (1997)).

Under this standard, Plaintiff in this case has not demonstrated that it met these four factors.  First, under Section 202 of P.L. 480, USAID has complete discretion to award the transportation of sorghum to any vessel it chooses, notwithstanding the Cargo Preference Act.  As such, Plaintiff will not likely succeed on the merits.   Second, Plaintiff has not shown that it will suffer an irreparable injury other than the fact that its vessel, the Thunder/Lightning, may be briefly unemployed and that the crew may be laid off temporarily (i.e. temporary monetary loss).  <u>See</u> Compl. at ¶ 21; TRO Memo. at 9-10.  This is not irreparable harm under the law.  <u>See</u> <u>Jordan v. Evans</u>, 355 F. Supp. 2d 72, 82 (D.D.C. 2004) (noting that "economic loss is insufficient to constitute irreparable harm unless the plaintiff's existence is threatened.").  <u>See also</u>  <u>American Cargo Transport, Inc. v. United States</u>, No. C05-393JR, slip. op. (Mar. 22, 2005 W.D. Wash.) (Exh. A).

Third, an injunction would substantially harm interested parties involved.  A temporary

injunction here would inevitably delay the food shipments and would cause CARE to bear the heavy expenses associated with storage charges for the sorghum and dead-freight charges for undelivered goods.  More importantly, an injunction will delay the delivery of the sorghum to the Somalians in need of food assistance.  Finally, the public interest will not be advanced with injunctive relief.  Public interest, however, will be certainly served with the delivery of this food to Somalians in an economic manner.

      1.    **Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits.**

Plaintiff alleges that USAID violated the Cargo Preference Act, 46 U.S.C. app. §1241(b) when it gave a foreign-flag vessel (Global Container Lines) the job of transporting the 2000 tons bagged sorghum to Somalia.  However, to prevail on the merits, Plaintiff must show that USAID's decision was arbitrary or violated the law.  Plaintiff's one-page argument on this issue fails to do so.  See TRO Memo at p. 9.

USAID awarded the foreign-flag vessel (Global Container Lines) this job because it was about five times cheaper.  See Lauren Landis Memo at p. 2 (Exhibit C); see also Scherl Decl. at ¶9 (Exh. B).  This is an important factor because "paying the higher U.S. Flag rates would reduce the amount of Title II resources available to the Agency [USAID] to address critical food needs this fiscal year."  See Landis Memo at p. 2 (Exhibit C).

But more importantly, Defendants complied with the law when it allowed Global Container Lines to transport the sorghum.  Under Section 202 of P.L. 480 of the Agricultural Development and Trade Act of 1990, as amended, 7 U.S.C. § 1722(a), USAID has complete statutory discretion to spend Title II funds in providing emergency food relief unencumbered by any other statutes, including the Cargo Preference Act.  Section 202 of P.L. 480 states:

> Emergency assistance: *Nothwithstanding any other provision of law*, *the Administrator may provide agricultural commodities to meet emergency food needs under this subchapter* through governments and public or private agencies, including intergovernmental organizations such as the World Food Program and other multilateral organizations, *in such manner and on such terms and conditions as the Administrator determines appropriate to respond to the emergency.*

7 U.S.C. §1722(a) (emphasis added).

Relying on this provision, USAID awarded Global Container Lines the contract to ship the sorghum to Somalia. Indeed, the D.C. Circuit had the opportunity to review a related "nothwithstanding" provision in the Foreign Assistance Act and held that such a provision gave USAID complete discretion to choose any vessels for transportation of disaster relief, without regard for the Cargo Preference Act. See Crowley Caribbean Transp., Inc. v. United States, 865 F. 2d 1281 (D.C. Cir. 1989).

In Crowley, plaintiff, which owned American-flag vessels, applied for part of the work of transporting disaster relief to El Salvador for the 1986 earthquake there. Defendant USAID, invoking the "nothwithstanding" provision under Section 491 of the Foreign Assistance Act ("FAA"), rejected plaintiff's proposal and gave the job to four foreign-flag vessels and two American-flag vessels. Id. at 1282-83.[2] Plaintiff sued seeking declaratory judgment that Section 491 exemption only applied to situations where using U.S.-flag vessels would cause significant

---

[2] Section 491 of the FAA allows the USAID to override other statutes, including the Cargo Preference Act. 22 U.S.C. § 2292(b). Section 491 of the FAA provides that:
> Subject to the limitations in section 2292a of this title, and *nothwithstanding any other provision of this chapter or any other Act*, the President is authorized to furnish assistance to any foreign country, international organization, or private voluntary organization, on such terms and conditions as he may determine, for international disaster relief and rehabilitation, including assistance relating to disaster preparedness, and to the prediction of, and contingency planning for, natural disasters abroad.

delay in providing disaster relief.  Id. at 1283.

The D.C. Circuit rejected this argument and held that the broad language of Section 491 allowed USAID complete discretion in choosing vessels to deliver disaster relief, nothwithstanding the requirements under the Cargo Preference Act.  Specifically, the D.C. Circuit explained that "[t]he [Cargo] Preference Act contemplates agencies incurring higher costs to use US-flag vessels, whereas the broad exemption of §491 on its face reflects a purpose to maximize the *relief* value of every dollar spent on international disaster relief."  Id. at 1283 (emphasis provided).

The holding in Crowley squarely applies to this case.  Similar to the broad language in Section 491, Section 202 of P.L. 480's equally broad language allows USAID to choose the vessel for delivering emergency food to developing countries.  USAID rightfully invoked the "notwithstanding" provision to save money and conserve the resources to fund programs that alleviate human sufferings.  Accordingly, under Crowley and the clear statutory language of Section 202 of P.L. 480, USAID made an informed decision to award the transportation of sorghum to a foreign-flag vessel.  The Court should not substitute its judgment for USAID's decision.  Varicom Int'l, 934 F. Supp. at 444.  Therefore, Plaintiff will not likely prevail on the merits of this case.

       2.    **Plaintiff Fails to Show Irreparable Harm.**

Plaintiff alleges that without injunctive relief the Thunder/Lightning vessel will remain idle in the port of Dubai and its crew will have to be laid off.  Compl. at ¶ 21; see also TRO Memo. at p. 10.  It seems Plaintiff is alleging lost profits as its irreparable harm.

It is settled law in this Circuit that economic loss is not sufficient to constitute irreparable

harm, unless the plaintiff's existence is threatened. Jordan v. Evans, 355 F. Supp.2d 72, 82 (D.D.C. 2004) (citing Wisconsin Gas Co. v.FERC, 758 F.2d 669, 673-74 (D.C. Cir. 1985)); Emily's List v. FEC, 362 F. Supp.2d 43, 52 (D.D.C. 2005) (noting that "financial harm alone cannot constitute irreparable injury unless it threatens the very existence of the movant's business). In Wisconsin Gas, the D.C. Circuit explained that "mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough." 758 F.2d at 674.

Here, Plaintiff has not alleged that it will go out of business but for the requested injunctive relief. Indeed, the Complaint merely alleges that "the vessel will remain idle until such time as it can be suitably employed." Compl. at ¶ 21. There is no imminence to the alleged irreparable harm. Emily's List, 362 F. Supp.2d at 52 (noting that plaintiff must allege harm that is actual and not theoretical and of such imminence that there is a clear and present need for equitable relief to present irreparable harm). Without more, the Plaintiff has not satisfied the burden of showing irreparable harm.

Morever, Plaintiff apparently raised this identical argument in the Western District of Washington. In that case, Plaintiff applied for a TRO to prevent USAID from transporting vegetable oil to India on foreign-flag vessels. See American Cargo Transport, Inc. v. United States, No. C05-393JR, slip. op. (Mar. 22, 2005 W.D. Wash.) (Exh. A). Plaintiff argued that "its U.S.- flag vessel, THUNDER/LIGHTNING, will potentially sit idle during the performance of the expected contracts, and as a result, [Plaintiff] might have to lay-off crew members and will potentially lose the ability to perform other shipping contracts transporting cargo from India to other ports." Id. at 2-3. The court rejected this argument and denied the TRO holding that

Plaintiff failed to show irreparable harm.  Id.[3]   The Court should similarly reject Plaintiff's irreparable harm argument in this case and deny the TRO.

        3.    **An Injunction May Substantially Injure Other Interested Parties.**

Plaintiff's recycled argument fails to consider the potential injuries to CARE and the Somalians in need of sorghum.[4]  Specifically, the issuance of a TRO would require USAID to direct that the shipment not be loaded for transportation.  There will be costs associated with this event, including the costs for storing 2000 tons of sorghum and the charges for dead-freight.  CARE (a non-profit organization) will most likely bear these costs.  More importantly, the likely delay of food shipment implicates significant humanitarian concerns.  These harms weigh against entry of the TRO.

        4.    **Public Interest Weighs Against the TRO**

Given the food shortage situation Somalia, there is a strong public interest in permitting the transportation of 2000 tons of sorghum to go forward in an economical manner, i.e., using a less expensive vessel.  Moreover, the public interest is further advanced when USAID can save on transportation costs so that it can continue to make resources available for humanitarian needs around the world.  See Scherl Decl. at ¶ 9 (Exh. B); Landis Memo at p. 2 (Exh. C).  Accordingly, the public interest in this case dictates against granting the TRO.

**IV.**    **Conclusion**

---

    [3]    It seems Plaintiff's current TRO Memorandum is a recycled memorandum used in the litigation in the Western District of Washington. TRO Memo. at 9-10.  The current TRO Memorandum actually refers to the delivery of vegetable oil in support of Plaintiff's irreparable harm argument in this case. Id.

    [4]    Again, Plaintiff's current TRO Memorandum refers to the delivery of vegetable oil at issue in the Western District of Washington.  TRO Memo at 10.

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Application for Temporary Restraining Order and for Preliminary Injunction.

Dated: July 25, 2005                          Respectfully Submitted,


                                              _____/s/_____
                                              KENNETH L. WAINSTEIN, D.C. BAR #451058
                                              United States Attorne


                                              _____/s/_____
                                              R. CRAIG LAWRENCE, D.C. BAR #171538
                                              Assistant United States Attorney


                                              _____/s/_____
                                              JOHN C. TRUONG, D.C. BAR #465901
                                              Assistant United States Attorney
                                              555 Fourth Street, N.W.
                                              Washington, D.C.  20530
                                              (202) 307-0406

                                              Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| AMERICAN CARGO TRANSPORT, INC. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Action No.: 05-1452 (RBW) |
| ANDEW S. NATSIOS, U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT, and JOHN JAMIAN, ACTING MARITIME ADMINISTRATOR, DEPARTMENT OF TRANSPORTATION, | ) ) ) ) ) ) ) ) | ECF |
| Defendants. | ) ) ) | |

**[PROPOSED] ORDER GRANTING DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND FOR PRELIMINARY INJUNCTION**

Upon consideration of Plaintiff's Application for Temporary Restraining Order and For Preliminary Injunction, Defendants' Opposition thereto, and the entire record, it is this_____ day of July, 2005,

ORDERED that Plaintiff's Application for Temporary Restraining Order and For Preliminary Injunction be and is hereby DENIED.

SO ORDERED.

_____
U.S. District Judge

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on the 25th of July, 2005, service of the foregoing <u>Defendant's Opposition to Plaintiff's Application for Temporary Restraining Order and for Preliminary Injunction</u> was made via the Court's Electronic Case Filing System and by facsimile to counsel to Plaintiff:

Timothy B. Shea
1629 K Street, N.W., #600
Washington, D.C. 20036
Facsimile No.: 202-835-0306

                                              /s/
                                    JOHN C. TRUONG
                                    Assistant United States Attorney