# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN CARGO TRANSPORT, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDEW S. NATSIOS,<br>U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT,<br>and JOHN JAMIAN, ACTING MARITIME ADMINISTRATOR, DEPARTMENT OF TRANSPORTATION,<br><br>    Defendants. | Action No.: 05-1452 (RBW)<br>ECF |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendants, U.S. Agency for International Development and Maritime Administrator, hereby move for summary judgment. In support of the said Motion, Defendants respectfully refer the Court to the attached Memorandum of Points and Authorities, the Statement of Material Facts for Which There is No Genuine Dispute, the Administrative Record (previously filed with the Court on September 7, 2005), and the documents submitted as part of Defendants' Opposition to Plaintiff's application for a Temporary Restraining Order/Preliminary Injunction.

Dated: November 4, 2005.                 Respectfully Submitted,

                                                                            /s/
                                          KENNETH L. WAINSTEIN, D.C. BAR #451058
                                          United States Attorney

                                                          /s/  
R. CRAIG LAWRENCE, D.C. BAR #171538  
Assistant United States Attorney  

                                                          /s/  
JOHN C. TRUONG, D.C. BAR #465901  
Assistant United States Attorney  
555 Fourth Street, N.W.  
Washington, D.C.  20530  
(202) 307-0406  

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CARGO TRANSPORT, INC. | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Action No.: 05-1452 (RBW) ) ECF |
| ANDEW S. NATSIOS, U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT, and JOHN JAMIAN, ACTING MARITIME ADMINISTRATOR, DEPARTMENT OF TRANSPORTATION, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.  **Introduction**

This case arose from Plaintiff American Cargo Transport's motion for a temporary restraining order and for a preliminary injunction ("TRO") alleging that Defendants, U.S. Agency for International Development (USAID) and the Maritime Administration (MARAD), violated the Cargo Preference Act, 46 U.S.C. app. § 1241(b), in connection with shipments of emergency food aid (sorghum) from Dubai, U.A.E., to Somalia (via Mombasa, Kenya).[1]  Under the Cargo Preference Act, seventy-five percent (75%) of food relief shipments should be by

---

[1] Sorghum is used to make porridge. Somalians combine it with lentils and vegetable oil to make it more nutritional.

1

American-flag vessels. Plaintiff alleges that USAID's award of a shipment of 2000 metric tons of bagged sorghum to a foreign-flag vessel (rather than Plaintiff's vessel) was arbitrary and capricious and in violation of the Administrative Procedure Act and the Cargo Preference Act. See Compl. at Counts I & II.

Specifically, Plaintiff alleges that the award to a foreign-flag vessel would cause the overall percentage of American-flag vessels' participation in the Title II program for cargo shipment to drop below 75% in violation of the Cargo Preference Act. Compl. at ¶ 19. Plaintiff, however, has a misconception of USAID's decision and its claims that USAID acted arbitrarily or abused its discretion when it awarded the cargo to a foreign-flag vessel are without merit. On the contrary, under 7 U.S.C. § 1722(a), USAID has complete discretion in transporting emergency food, "notwithstanding" the Cargo Preference Act or any other provision of law. See 7 U.S.C. § 1722(a),

The Court held a hearing on Plaintiff's TRO and denied it. See July 26, 2005 TRO Hearing. (See Gov. Exh A). In denying the TRO, the Court held that there was nothing to prevent USAID from invoking the "notwithstanding" provision at anytime that USAID deemed it necessary to address emergency food situations in the world. See TRO Trans. at 28-29. The Court concluded that USAID did not violate the APA when USAID invoked the "notwithstanding" authority to award the sorghum cargo to a foreign-flag vessel. Id. at 29-30. The Court then denied Plaintiff's TRO. For these same reasons, the Court should grant summary judgment in Defendants' favor and dismiss this case with prejudice.

Alternatively, the Court can dismiss this case as moot as Plaintiff no longer has a live controversy for the Court to resolve. The disputed sorghum shipment was transported on July

27, 2005, one day after the TRO hearing, and arrived at Mumbasa, Kenya, enroute to Somalia, on August 7, 2005. Therefore, there is nothing else for the Court to decide and the case is moot.

II.     **Background.**

Under the Agricultural Trade and Development Act of 1954 (Title II), 7 U.S.C. § 1721 et seq., USAID administers a program that provides food aid commodities to meet humanitarian needs in developing countries around the world, including Somalia. Declaration of Denise Scherl at ¶ 3 (Gov. Exh. A).[2] This program is called Food for Peace Program. Id. Under the Food for Peace Program, USAID collaborates with other non-profit organizations to distribute food around the world. Id.

Recently, USAID approved an emergency food aid program for the Cooperative for American Relief Everywhere (CARE) – an non-profit organization – to distribute food to approximately 77,000 households in south central Somalia. Id. at ¶5. The total tonnage for this program is 24,240 metric tons of sorghum, lentils, vegetable oil, and corn soy blend for CARE to distribute. Id. Due to the emergency nature of this program, USAID identified approximately 2,000 tons of sorghum – readily available in Dubai, U.A.E.– for immediate delivery to Somalia, via Mombasa, Kenya. Id. CARE then contacted a freight forwarder to solicit bids for transporting the sorghum to Somalia.

On July 11, 2005, through a shipping agent, USAID issued a request for proposals seeking bids to transport the sorghum cargo. See A.R. 9-11. On July 13, 2005, Plaintiff American Cargo Transport ("ACT") and other companies offered their services. See Lauren

---

[2] The Scherl Declaration was previously submitted as part of Defendants' Opposition to Plaintiff's TRO Motion. For the Court's convenience, Defendants are re-submitting the Scherl Declaration as "Gov. Exh. B" with this Motion for Summary Judgment.

3

Landis July 13, 2005 Memo ("Landis Memo") at A.R. 6-8.[3] Plaintiff offered the service of its U.S.-flag vessel (Thunder/Lighning) with the rate of $298 per metric ton, picking up the cargo from Dubai on July 20, 2005, and delivering it to Mombasa, Kenya, on July 29/30 2005. See A.R. 22-23; see also Landis Memo at A.R. 6. Other companies also made offers. See A.R. 14-19. The lowest bid came from Global Container Lines (a foreign-flag vessel), with the rate of $65 per metric ton, picking up on July 23, 2005, for delivery on August 7, 2005. See A.R. 20-21; see also Landis Memo at A.R. 6.

There was an extreme discrepancy between the prices that Plaintiff offered and what Global Container Lines offered. Scherl Decl. at ¶ 9. The difference was $233 per metric ton. Due to this discrepancy, on July 13, 2005, USAID invoked the "notwithstanding" authority provision in 7 U.S.C. § 1722(a), to override compliance with the Cargo Preference Act. Id.; see also Landis Memo at A.R. 6. Indeed, USAID explained that "paying the higher price U.S. flag rates would reduce the amount of Title II resources available to the Agency [USAID] and would affect the ability of the program to alleviate the human suffering in this region in this fiscal year." Scherl Decl. at ¶ 9. See also Landis Memo at A.R. 7. USAID also considered the benefit of Plaintiff's offer to deliver the sorghum to Somalia seven days earlier against the savings gained from using a foreign-flagged vessel, and decided that the benefit does not outweigh the "over all harm to the future of the program by paying [Plaintiff's] exorbitant rates." Scherl Decl. at ¶ 9. Using this exemption, USAID awarded the transportation contract to a non-U.S. flagged vessel. See Scherl Decl. ¶¶ 10-13; see also Landis Memo at A.R. 6-8. The July 13th decision to

---

[3] "A.R." refers to the Administrative Record that Defendants filed with the Court on September 7, 2005.

invoke the "notwithstanding" provision was finally approved on July 18, 2005.  See also Landis Memo at A.R. 8

Not satisfied with USAID's decision, on July 20, 2005, Plaintiff's attorney wrote to USAID protesting USAID's decision and asked USAID to reconsider.  See A.R. 85-86.  On that same day, Plaintiff's agent also tried to persuade USAID to reverse course.  See A.R. 88-89, 93-95.  Plaintiff then reached out to Defendant Maritime Administration ("MARAD) on July 21, 2005, for help.  See A.R. 91, 97-98.  Defendant MARAD actually contacted USAID and argued that the cargo should be awarded to a U.S.-flag vessel.  Id.  USAID, however, stood by its decision.

On July 22, 2005, Plaintiff then applied for a TRO/PI and, concurrently, filed this lawsuit seeking declaratory judgment that USAID violated the Administrative Procedure Act when it awarded the cargo to a foreign-flag vessel.[4]  On July 26, 2005, the Court held a hearing on the Plaintiff's TRO and denied it.  After the hearing, the Court also set a briefing schedule for the parties to brief the issues on the merit.

---

[4] This is not the first time that Plaintiff filed such a lawsuit.  Four months prior to this lawsuit, in March 2005, Plaintiff filed a similar TRO application and complaint in the Western District of Washington trying to prevent USAID from transporting vegetable oil to India on foreign-flag vessels.  See American Cargo Transp. Inc. v. United States, No. 05-292, slip op. at 1 (W.D. Wash. Mar. 22, 2005) ("Washington case") (Gov. Exh. C).  Like the current complaint, the "Washington case" also alleges that USAID violated the Cargo Preference Act for awarding the transportation contract to foreign-flag vessels.  Id. at 2.  The court in the "Washington case" denied Plaintiff's TRO application for basically the same reason that this Court did, holding that Plaintiff could not demonstrate irreparable harm.  Id. at 3-4.  See TRO Trans. at 30 -31(ruling that "there has not been a showing of irreparable harm.").

III.    **Standard of Review**

    A.    **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment: "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

    Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the overall design of the rules of civil procedure, which is to secure the just, speedy, and inexpensive determination of every action. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

    The party moving for summary judgment bears the initial responsibility of informing the trial court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Alexis v. District of Columbia, 44 F. Supp. 2d 331, 337 (D.D.C. 1999); Celotex Corp., 477 U.S. at 323. When the moving party has carried its burden, the responsibility shifts to the nonmoving party to show that there is, in fact, a genuine issue of material fact for trial. Alexis, 44 F. Supp. 2d at 337. The opposing party must provide "specific facts showing that there is a genuine issue for trial," and "may not rely on mere allegations or denials to prevail." Id. The trial court must enter summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322; see also Alexis, 44 F. Supp. 2d at 337 ("Rule 56(c) *mandates* summary judgment" in this circumstance) (emphasis added).

**B.     Standard of Review Under the Administrative Procedure Act (APA)**.

Plaintiff alleges that USAID violated the APA when it awarded the shipment to a foreign-flag vessel. Under the APA, the reviewing court shall not set aside an agency action unless it is found by the court "to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance to law." 5 U.S.C. § 706. "Under this standard, 'there is a presumption in favor of the validity of the administrative action.'" Varicom Int'l v. OPM, 934 F. Supp. 440, 444 (D.D.C. 1996). A reviewing court must ascertain whether the agency decision was based on relevant factors and whether there was clear error of judgment. Id. More importantly, the reviewing court must not substitute its judgment for that of the agency. Id. "A reviewing court will 'uphold a decision less than ideal clarity if the agency's path may be reasonably discerned.'" Dickson v. Sec'y of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995). As discussed below, USAID considered all relevant factors and made a decision that would have long term benefit to its aid program. Its decision was neither arbitrary nor capricious.

**IV.    Argument**

**A.     USAID Did Not Violate the APA.**

Plaintiff alleges that USAID violated the Cargo Preference Act, 46 U.S.C. app. §1241(b) when it gave a foreign-flag vessel (Global Container Lines) the contract of transporting the 2000 tons of bagged sorghum to Somalia. However, to prevail on the merit, Plaintiff must show that USAID's decision was arbitrary or violated the law. Plaintiff cannot do so here.

USAID awarded the foreign-flag vessel (Global Container Lines) this job because it was about five times cheaper. See Landis Memo at A.R. 6-7; see also Scherl Decl. at ¶9 (Gov. Exh. A). Specifically, Plaintiff's offer ($298/ton) cost $233/ton more than what the foreign-flag

7

vessel offered ($65/ton).  This cost differential was an important factor because "paying the higher U.S. Flag rates would reduce the amount of Title II resources available to the Agency [USAID] to address critical food needs this fiscal year."  See Landis Memo at A.R. 7.

But more importantly, Defendants complied with the law when it gave the contract to Global Container Lines to transport the sorghum.  Under 7 U.S.C. § 1722(a), USAID has complete statutory discretion to spend Title II funds in providing emergency food relief unencumbered by any other statutes, including the Cargo Preference Act.  Section 1722(a) states:

> Emergency assistance: *Notwithstanding any other provision of law*, *the Administrator may provide agricultural commodities to meet emergency food needs under this subchapter* through governments and public or private agencies, including intergovernmental organizations such as the World Food Program and other multilateral organizations, *in such manner and on such terms and conditions as the Administrator determines appropriate to respond to the emergency.*

7 U.S.C. §1722(a) (emphasis added).

Relying on this provision, USAID awarded Global Container Lines the contract to ship the sorghum to Somalia.  Indeed, the D.C. Circuit had the opportunity to review a related "notwithstanding" provision in the Foreign Assistance Act ("FAA") and held that such a provision gave USAID complete discretion to choose any vessels for the transportation of disaster relief cargo, without regard for the Cargo Preference Act.  See Crowley Caribbean Transp., Inc. v. United States, 865 F. 2d 1281 (D.C. Cir. 1989).

In Crowley, plaintiff, which owned American-flag vessels, applied for part of the work of transporting supplies to El Salvador as part of the disaster relief for the 1986 earthquake there.  Crowley, 865 F. 2d at 1282.  Defendant USAID, invoking the "notwithstanding" provision under Section 491 of the FAA, rejected plaintiff's proposal and gave the job to four foreign-flag

8

vessels and two American-flag vessels. Id. at 1282-83.[5] Plaintiff sued seeking declaratory judgment that Section 491 exemption only applied to situations where using U.S.-flag vessels would cause significant delay in providing disaster relief. Id. at 1283.

The D.C. Circuit rejected this argument and held that the broad language of Section 491 allowed USAID complete discretion in choosing vessels to deliver disaster relief, notwithstanding the requirements under the Cargo Preference Act. Id. at 1283. Specifically, the D.C. Circuit explained that "[t]he [Cargo] Preference Act contemplates agencies incurring higher costs to use US-flag vessels, whereas the broad exemption of §491 on its face reflects a purpose to maximize the *relief* value of every dollar spent on international disaster relief." Id. at 1283 (emphasis provided).

The holding in Crowley squarely applies to this case. Similar to the broad language in Section 491 of the FAA, Section 1722(a)'s equally broad language allows USAID to choose the vessel for delivering emergency food to developing countries, "notwithstanding" the Cargo Preference Act. See 7 U.S.C. § 1722(a). USAID rightfully invoked the "notwithstanding" provision to save money and conserve the resources to fund programs that alleviate human suffering. Accordingly, under Crowley and the clear statutory language of 7 U.S.C. § 1722(a),

---

[5] Section 491 of the FAA allows the USAID to override other statutes, including the Cargo Preference Act. 22 U.S.C. § 2292(b). Section 491 of the FAA provides that:
> Subject to the limitations in section 2292a of this title, and *nothwithstanding any other provision of this chapter or any other Act*, the President is authorized to furnish assistance to any foreign country, international organization, or private voluntary organization, on such terms and conditions as he may determine, for international disaster relief and rehabilitation, including assistance relating to disaster preparedness, and to the prediction of, and contingency planning for, natural disasters abroad.

22 U.S.C. § 2292(b).

USAID made an informed decision to award the transportation of sorghum to a foreign-flag vessel, which cost significantly less than the U.S.-flag vessel.  See Landis Memo at A.R. 6-8; Scherl Decl. at ¶¶ 9-11.

At the TRO hearing, Plaintiff suggested USAID should have provided advance notice that it intended to designate a cargo as an emergency cargo before USAID could invoke the "notwithstanding" authority.  TRO Trans. at p. 19.  When pressed by the Court to provide any particular law or regulation that mandated such a notice requirement, Plaintiff conceded that no such law or regulation exists.  Id. at p. 19-20.  Indeed, the Court correctly rejected Plaintiff's suggestion and held no such authority exists.  TRO Trans. p. 28-29.  The Court then stated that it would not read that requirement into the law.  Id.  This holding is consistent with the D.C. Circuit's holding in Crowley.  Specifically, as discussed above, in Crowley, the plaintiff sought to require USAID to make a finding that using U.S.-flag vessels would cause significant delay before USAID could invoke the "notwithstanding" provision provided in the FAA.  Crowley, 865 F.2d at 1282-83. The D.C. Circuit rejected this argument and held that "given the broad language of § 491, such a claim would be most implausible." Id. at 1283.  The Court should reject any similar requirement here.

Accordingly, absent some clear error of judgment, the Court should not substitute its judgment for USAID's decision.  Varicom Int'l, 934 F. Supp. at 444.  Under these circumstances, the Court should grant summary judgment in Defendants' favor as USAID's decision did not violate the APA and dismiss this case with prejudice.**6**

---

      6      Plaintiff does not have a claim against Defendant MARAD.  Specifically, Plaintiff's TRO and Complaint fail to allege what Defendant MARAD's action or omission that caused Plaintiff's alleged injuries.  In fact, to the contrary, Defendant MARAD was sympathetic

B.     **Plaintiff's Cause of Action is Now Moot.**

Plaintiff's cause of action is moot because the Court can offer no relief that would redress Plaintiff's asserted grievance. Specifically, the sorghum shipment set sailed on July 27, 2005, the day after the TRO hearing, and it arrived at its destination (Mombasa, Kenya) on August 7, 2005. See Ali v. Gonzalez, 387 F. Supp. 2d 16, 18 (D.D.C. 2005) (noting that a case is considered moot either when the issues presented are no longer live or the parties no longer have a legally cognizable interest in the outcome).

However, a court may nevertheless address the issues presented if the those issues "are capable of repetition, yet evading reviewing." Beethoven.com v. Library of Congress, 394 F. 3d 939, 951 (D.C. Cir. 2005). To invoke this exception, a plaintiff must establish that "(1) the challenged actions is in its duration too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the *same complaining party* will be subjected to *the same action again*." Id. (emphasis added). The plaintiff has the burden of demonstrating that these two requirements are met. See Southern Co. Serv. Inc. v. FERC, 416 F. 3d 39, 43 (D.C. Cir. 2005) ( noting that the burden is on the petitioner to show that the mootness exceptions are met). Defendants do not contest that Plaintiff can meet the first of these two requirements. Plaintiff, however, will not be able to show that it can meet the second one.

As the D.C. Circuit explained, "[o]ne function of the 'capable of repetition' doctrine is to satisfy the Constitutional requirement, set forth in Article III, that courts resolve only continuing

---

to Plaintiff's situation when it lost out on the bid and Defendant MARAD actually lobbied USAID on Plaintiff's behalf for the contract. See A.R. 91, 97-98. Under these facts, Plaintiff simply fails to state a claim against Defendant MARAD for which relief can be granted. See Fed. R. Civ. P. 12(b)(6). Accordingly, the Court should dismiss Defendant MARAD from this lawsuit.

11

controversies between the parties." PETA v. Gittens, 396 F. 3d 416, 422 (D.C. Cir. 2005). The D.C. Circuit then emphasized that "for a controversy or a wrong to be 'capable of repetition,' there must be at least 'a reasonable expectation that the same complaining party would be subjected to the same action again." Id. at 423. "A theoretical possibility, however, is not sufficient to qualify as 'capable of repetition.'" Beethoven.Com, 304 F. 3d at 951. "There must instead be a 'reasonable expectation' or 'demonstrated probability' that the action will recur." Id.

Here, as the record stands, for Plaintiff to meet the "same complaining party" element, it must show that it would be the lowest U.S.-flag vessel bidder the next time USAID has a tender for transporting emergency food. In addition, Plaintiff must also show that USAID will invoke the "notwithstanding" provision again and that would somehow harm Plaintiff. It is at best a speculation – not "reasonable expectation" or "demonstrated probability" – that all of these facts will align to cause Plaintiff injuries and thus give rise to a similar cause of action. Accordingly, Plaintiff cannot meet the mootness exception. The Court, therefore, should simply dismiss this case as moot because the ship has sailed.

Dated: November 4, 2005.                    Respectfully Submitted,

                                                       /s/
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

                                                       /s/
R. CRAIG LAWRENCE, D.C. BAR #171538
Assistant United States Attorney
                                                       /s/
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530

(202) 307-0406
Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CARGO TRANSPORT, INC. )<br><br>Plaintiff, )<br><br>v. )<br> )<br>ANDEW S. NATSIOS, )<br>U.S. AGENCY FOR INTERNATIONAL )<br>DEVELOPMENT, )<br>and JOHN JAMIAN, ACTING )<br>MARITIME ADMINISTRATOR, )<br>DEPARTMENT OF TRANSPORTATION, )<br> )<br>Defendants. ) | Action No.: 05-1452 (RBW)<br>ECF |

**[PROPOSED] ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Upon consideration of Defendant's Motion for Summary Judgment, any Opposition thereto, and the entire record, it is this_____ day of _____, 2005,

ORDERED that Defendant's Motion for Summary Judgment be and is hereby GRANTED; and it is

ORDERED that the above-captioned action be and is hereby DISMISSED with prejudice.

SO ORDERED.

_____
U.S. District Judge