UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CARGO TRANSPORT, INC. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDEW S. NATSIOS, )<br>U.S. AGENCY FOR INTERNATIONAL )<br>DEVELOPMENT, )<br>and JOHN JAMIAN, ACTING )<br>MARITIME ADMINISTRATOR, )<br>DEPARTMENT OF TRANSPORTATION, )<br>)<br>Defendants. )<br>) | Action No.: 05-1452 (RBW)<br>ECF |

I, Denise Scherl, hereby declare, under penalty or perjury, as follows:

1. I am the Chief of the Transportation Division in the Office of Acquisition and Assistance of the Untied States Agency for International Development (USAID). I have served in this capacity since 2003. I am responsible for administering, developing and monitoring the policies, regulations and statues government the transportation of commodities financed by USAID and those financed under Title II of P.L 480. The Division administers compliance with the requirement of the Cargo Preference Act.



2. Prior to becoming chief of the transportation Division, I serve as Chief of the Transportation Branch within USAID's Transportation Division. In total, I have more than 17 years of experience overseeing and analyzing the transportation of U.S.-funded commodities.

3. Under P.L. 480 the U.S. Department of agriculture and USAID provide food aid commodities to meet humanitarian needs in the developing world under what is commonly referred to as the Food for Peace program. In this program, USAID works with cooperating sponsors (non-profit organizations) to distribute food aid to those in need. The sponsors are responsible for handling the implementation of food aid projects in various nations, including the procurement of ocean transportation of food aid. The transportation is arranged through a competitive system in accordance with USAID's Booking Guidelines.

4. For agricultural commodities financed by the U.S. government for overseas export, Federal agencies must comply with the Cargo Preference Act of 1954, 46 U.S.C. S 1241, as amended. The Act requires that Federal agencies take necessary and practicable steps to ensure that privately owned U.S.-flag vessels transport at least 75 percent of the gross tonnage of P.L. 480 cargo "to the extent such vessels are available at fair and reasonable rates."

5. USAID approved an emergency food aid program for the Cooperative for American Relief Everywhere (CARE) for south central Somalia. The food is distributed free or distributed under food for work programs with a target population of 77,000 households. The total tonnage for this program is 24,240 metric tons of sorghum, lentils, vegetable oil and corn soy blend for CARE to distribute in the affected areas by April 2006.

6. Due to the emergency nature of this program, USAID identified 2,000 metric tons of sorghum which was available in a "pre-positioned" (PrePo) warehouse in Dubai, U.A.E. and available for immediate transport to Mombasa, Kenya. USAID made the sorghum available for CARE to make arrangements for transport to Mombasa, Kenya, where CARE would move the food overland to distribution centers in Somalia.

7. CARE's freight forwarder received freight offers on July 13, 2005 for this cargo. ACT offered service by their integrated tug-barge, THUNDER/LIGHTNING, with an estimated time of departure from Dubai, July 20. Estimated time of arrival Mombasa, July 29/30 at a freight rate of $298 per ton.

8. Foreign-flag service was offered by Global Container Lines at a rate of $65 per ton. Estimated time of departure Dubai July 23, estimated time of arrival Mombasa August 7.

9. Due to the extreme price disparity between the U.S. Flag offer, which was nearly five times higher than the non U.S.-flag offer offers for this critical Title II emergency food aid cargo, USAID elected to rely on the "notwithstanding" authority (see below) granted to the Agency by P.L. 480 to override compliance with cargo preference rules. CARE was instructed to flag this cargo to the non-U.S. Flag carrier. Paying the higher U.S. Flag rates would reduce the amount of Title II resources available to the Agency and would affect the ability of the program to alleviate the human suffering in this region in this fiscal year. I considered the possible benefit of ACT's offer to deliver the commodities seven days earlier than the non U.S.-flag vessel and determined that the small benefit of somewhat earlier delivery was more than offset by the overall harm to the future of the program by paying ACT's exorbitant rates.

10. Cargo preference rules currently require Food For Peace (FFP) to ship at least 75% of the Title II commodities it exports on board U.S. Flag vessels. Even under normal circumstances, cargo preference rules place burdens on Title II by imposing higher shipping costs and added administrative burdens on the program. In spite of these burdens and though it retains the right to do so, the Agency has only very rarely relied on its Title II emergency program notwithstanding authority to avoid compliance with cargo preference rules.

11. FFP recently established a commodity PrePo facility in Dubai, U.A.E. This facility, which began operation in September 2004, allows FFP to maintain a rotating stock of Title II emergency food commodities at a location that is

relatively close to critically food insecure areas, particularly those in the Horn of Africa and East Africa.

12. For commodities being shipped from the U.S. to the PrePo facility, FFP complies with cargo preference rules. Unfortunately, the Cargo Preference Act is drafted in such a way that it is unclear as to whether it applies to commodities shipped outbound from the PrePo facility to recipient countries. If indeed cargo preference rules were to apply to outbound PrePo shipments, they would require FFP to comply with the 75% mandate twice for the same commodities — once to Dubai for the U.S., and again from Dubai to the final destination port.

13. Section 202(a) of P.L. 480 allows the Administrator to implement Title II emergency programs "notwithstanding any other provision of law." This authority is inherent to the Title II emergency program and no particular actions need be taken by the Agency to rely on it.

I declare under penalty of perjury, in accordance with 28 U.S.C. 1746, that the statements made in this declaration are true and correct to the best of my knowledge and belief.

EXECUTED this 25th day of July 2005.

*[signature]*
DENISE SCHERL