UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA CARGO TRANSPORT, INC. ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No.: 05-1452 (RBW) |
| ANDEW S. NATSIOS, ) U.S. AGENCY FOR INTERNATIONAL ) DEVELOPMENT, ) and JOHN JAMIAN, ACTING ) MARITIME ADMINISTRATOR, ) DEPARTMENT OF TRANSPORTATION, ) | |
| Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this action, Plaintiff, America Cargo Transport, Inc. ("ACT"), challenges as arbitrary, capricious and not in accordance with law a decision by the United States Agency for International Development ("USAID") transportation managers to resort to extraordinary authorities to waive U.S.-flag rates it considered "exorbitant."

Defendants, in their motion for summary judgment, contend that the decision was reasonable, that the action is within the terms of *Crowley Caribbean Transport Inc. v. United States,* 685 F. 2d 1281 (D.C. Cir.1989) construing similar statutory language, and that the case is now moot. The Government also suggests that the Maritime Administration ("Marad") is not a proper defendant in this action. Plaintiff addresses each of these points in turn below.

1

## I.	The Decision to Invoke the Emergency Authorities Constituted an Exercise of Discretion as to Which Review is Available under the APA.

As ACT demonstrated in its Motion for Summary Judgment and supporting papers, the rationale for the decision to invoke emergency authorities by USAID was manifestly wrong and the procedures used were defective. There is no dispute that USAID sought to resort to the extraordinary authorities because Plaintiff's freight rates were considered "exorbitant." See Defendants' Statement of Material Facts as to Which there is No Genuine Dispute at para. 9 citing Affidavit of Denise Scherl dated July 25, 2005 and AR 6-8. Remarkably, even at this stage, Defendants *nowhere* acknowledge that ACT's rates were determined by Marad to be fair and reasonable for the voyage with ACT's vessel. The rate analysis took into account such things as the length of the voyage, the cost of the fuel, loading and unloading time, load and discharge costs, port costs, as well as capital costs. Administrative Record ("AR") at 100 -102. USAID had no data, no rules, and no calculation to support its sweeping ejection of ACT's rates.

Also absent from Government submission is any consideration:

• that USAID was well behind in its obligation to use U.S-flag vessels for at least 75% of the Title II tonnage for the year;

• that USAID needed a plan to meet that obligation; or

• that Marad reimbursed USAID 95% of the ocean freight differential.

Conspicuous, too, is the complete absence in the record submitted by USAID, which is certified to be a true and accurate record of the decision to approve the booking of the non-US-flag vessel, AR at 01, of any of the letters or emails of protest submitted to

USAID by ACT through its broker and attorney or the advisories provided by Marad. This determined aversion must be taken as a frank admission that USAID never considered ACT's protests or Marad's guidance in July, 2005.

Courts "begin with the strong presumption that Congress intends judicial review of administrative action." *Bowen v. Michigan Acad. Of Family Physicians,* 476 U.S. 667, 670, 90 L. Ed. 2d 623, 106 S. Ct. 2133 (1986). Thus, "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Abbott Labs. v. Gardner,* 387 U.S. 136, 140, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967) (collecting cases). See *Steenholdt v. FAA*, 314 F. 3d 633, 638 (D.C. Cir. 2003) (noting the "strong presumption of reviewability under the [APA]"); *Aerolineas Argentinas, S.A. v. U.S. Department of Transportation*, 415 F.3d 1 (D.C. Cir. 2005) (agency orders reviewable by the President held reviewable under the APA); *Dickson v. Secretary of Defense*, 68 F. 3d 1369 (D.C. Cir. 1995) (holding reviewable denial of waivers by military corrections boards).

USAID's decision to convert this tender from one for which Cargo Preference applied to one putatively exempt is a standard administrative decision as to which judicial relief always has been available. As the Circuit Court noted in another setting, "[w]e should not lightly presume the Congress intended to grant the DoT an unreviewable discretion to engage in otherwise noxious decision making." *Aerolineas Argentinas, S.A. v. U.S. Department of Transportation, supra* at 4.

There can be little doubt that the decisionmaking here is well within the purview of administrative actions regularly subject to judicial review.

**II.     No Emergency Within the Meaning of The Statute was Properly Invoked**

The Government has not demonstrated that an emergency within the meaning of 7 U.S.C. § 1722(a) was properly invoked.

The grant agreement with CARE provided for application of Cargo Preference and, of course, the tender did as well until USAID saw the freight rates. CARE, the entity in control of the cargo, provided no additional instructions or advice to USAID after publication of the tender on July 11, 2005. The decision to invoke emergency authorities was taken solely at the initiative of USAID without consultation with or request from CARE.  The document in the record cited by the Government to support the claim of emergency is an email exchange between two employees of USAID. In the first, Denise Scherl inquires "We can assume that this is an emergency, right?" Her correspondent, Christine Karpinski, answered, "Yes, CARE's call forward is marked emergency."  The call forward from CARE itself was not provided in the Administrative Record but it has been supplied recently to the undersigned counsel and will be included in the Government opposition. The document, dated in early June 2005, merely describes the grant type as "emergency/ direct distribution." CARE makes no request that ordinary contracting procedures like Cargo Preference should be waived. The emergency within the meaning of Section 1722 was declared by USAID in apparent reliance on this document from CARE. Apart from the circularity of the assertion of emergency, it is now conceded that no post publication exigency prompted the declaration of emergency within the meaning of Section 1722.

As ACT has amply demonstrated in its Motion for Summary Judgment, the signer of the waiver decision lacked the authority to take that action. See Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue at para. 41.

There is no basis in the grant to CARE for this action. The grant incorporated application of Cargo Preference, AR at 56, 57, as did the tender itself. Hence, whatever latitude USAID may have under Section 1722(a) to "provide agricultural commodities to meet emergency food needs … in such manner and on such terms and conditions" as the Administrator determines, *USAID has not chosen to do so in the grant agreement to CARE under review*. Rather, in this grant to CARE the Administrator has chosen expressly to incorporate Cargo Preference.

Thus, the decision to invoke these emergency authorities constituted an act of administrative discretion taken by USAID on its own initiative without support in the grant that is reviewable under the APA. As summarized above, the basis for the decision was manifestly wrong.

### III.     Reliance on *Crowley* is Misplaced

Defendants' reliance on the decision in *Crowley Caribbean Transport Inc. v. United States,* 685 F. 2d 1281 (D.C. Cir.1989) is misplaced. The case arose out of a $50 million appropriation to USAID for emergency relief and rehabilitative assistance to the victims of the 1986 earthquake in El Salvador. See 132 *Cong. Rec. S.* 16624 (October 16, 1986). *Crowley* was decided on the pleadings alone so the basis and authority for invoking emergency authorities was unchallenged. The legislative earmark itself and the

unexpected nature of the event reinforced the emergency nature of the action. There was no indication that Cargo Preference was ever applied to the grant or activity.

Further, as Plaintiff urged in its motion, the legislative history of the language and intention of 7 U.S.C. § 1722 is different from that of Section 2292(a), the provision interpreted by the Court in *Crowley*. The Committee Report on the amendments enacting the "notwithstanding" amendment in Section 1722 declares that:

> None of the revisions to Public Law 480 contained in this legislation are intended to modify, alter, or reduce the 75 per cent U.S. flag shipping requirement provided for under current law.

S. Rept. No. 357, 101st Cong., 2nd Sess. at 168 (1990), reprinted at 1990 *US Code and Administrative News* 4856.

## IV.  The Controversy Remains Live

The Government contends that Plaintiff's cause of action is moot on the basis that the Court can offer no relief to redress Plaintiff's grievance. Essentially, the argument is that since the cargo has already been moved, nothing is left to adjudicate. The Government recognizes, as it must, that controversies that are capable of repetition, yet evading review, are justiciable.  If the plaintiff establishes that the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and there was a reasonable expectation that the same complaining party will be subjected to the same action again, the matter is capable of repetition. See *Beethoven.com v. Library of Congress*, 394 F.3d 939, 951 (D.C. Cir. 2005). Defendants do not contest that Plaintiff

6

meets the first prong of the requirement, that is, that the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration.

The Government contends, however, that there is no reasonable expectation that Plaintiff will suffer from invocation of the extraordinary authorities at any time in the future. There is no support whatsoever for this *ipse dixit*. Nowhere in the Government submission is there an undertaking to forswear use of these extraordinary authorities in the future. Nor is there any acknowledgment that USAID has invoked these authorities for the very same reason, objections to U.S.-flag rates, in the past. Indeed, USAID has *threatened* to invoke its emergency authorities episodically to gain leverage against U.S.-flag carriers.

In *Osprey Shipholding Corp. v. Cohen*, D.D.C. C.A. No. 99- 2841 (August 29, 2000) Judge Kessler rejected a mootness claim in connection with a dispute relating to application of Cargo Preference to certain cargo controlled by the Department of Defense. After the Court had denied an application for injunctive relief and the cargo had moved on a foreign vessel, the Government urged that the case was moot. Judge Kessler, after reviewing the authorities, in denying the motion, declared, "Plaintiff has demonstrated that there is a reasonable expectation that the same action (awarding of a contract to a foreign flag carrier in possible violation of the Cargo Preference Act) will recur in the future, and thus has met the requirement for obtaining review under the exception to the mootness doctrine." *Id.* at 5. In fact, it is apparent that in *Crowley* itself the vessel charters had already been completed and so the case would have been subject to a similar claim of mootness.

ACT, with five vessels regularly offering on Title II tenders, will remain subject to peremptory invocation or threat of this authority absent further judicial guidance.

## V. Marad Remains a Proper Party in this Action

The final prong of Defendants' argument, which is relegated to a footnote, is the suggestion that Marad should be dismissed as a defendant, because Plaintiff has not sought any specific relief against Marad.

Marad has a statutory role in the administration of the Cargo Preference program and sought to discharge that role in the agency action under review. That role and activity is enough to warrant inclusion of Marad as a proper party in this action. There is a long history of inattention and occasional tension within the Government in the administration of the Cargo Preference Act. The Congressional mandate in 46 U.S.C. § 1241(b) that "[e]very department or agency" having responsibility under Cargo Preference shall administer its programs with respect to the subsection under guidance from Marad under delegation from the Secretary of Transportation is binding on USAID as much any other agency. See, e.g., *Victory Maritime Inc. v. Pressley*, D.D.C. C.A. 01-0381 (where United States Attorney acknowledged that the Defendant agencies, Marad and USAID, had not interpreted the statutory provisions relating to Cargo Preference in a uniform manner, competing interpretations were referred to Attorney General's designee for decision); April 19, 1994 Memorandum from Walter Dellinger, Assistant Attorney General to Stephen H. Kaplan, General Counsel, Department of Transportation (confirming legal authority of Marad to prescribe charter terms in USDA sponsored grants).

Marad remains a proper party for review of agency action and for any relief that may be afforded.

**VI.    Conclusion**

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied. A response to Defendants' Statement of Material Facts as to Which There is No Genuine Dispute is submitted herewith.

                                                Respectfully submitted,

                                                Timothy B. Shea

                                                DC Bar No. 234005
                                                Nemirow Hu & Shea
                                                1629 K Street, NW Suite 500
                                                Washington, DC 20036
                                                Telephone 202-835-0300

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICA CARGO TRANSPORT, INC. )<br><br>    Plaintiff, )<br><br>    v. )<br><br>ANDEW S. NATSIOS, )<br>U.S. AGENCY FOR INTERNATIONAL )<br>DEVELOPMENT, )<br>and JOHN JAMIAN, ACTING )<br>MARITIME ADMINISTRATOR, )<br>DEPARTMENT OF TRANSPORTATION, )<br><br>    Defendants. ) | Civil Action No.: 05-1452 (RBW) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IN NO GENUINE DISPUTE**

Pursuant to Local Rule 7(h) Plaintiff, America Cargo Transport, Inc., hereby responds by paragraph to the statement of material facts as to which Defendants claim there is no genuine dispute:

1. – 2. Admitted.

3. Denied. Pursuant to a grant agreement dated April 2005 USAID made available 2000 metric tons of sorghum to CARE for delivery to Somalia. Administrative Record ("AR") at 35.

4. Denied. On July 11, 2005, pursuant to the grant to CARE, CARE's agent sent out a request for proposal and designated the sorghum cargo delivery as "urgent" with delivery not more than 20 days form on-board date. AR 09.

5. Denied. In the document referred to in support in the Administrative Record ("AR"), USAID does not declare the movement as an emergency within the meaning of Section 1722; rather, the document states that one USAID employee inquires of another "WE CAN ASSUME THAT THIS IS AN EMERGENCY, RIGHT?" (capitals in the original). The other employee replied that CARE's call forward is marked emergency. The call forward document from CARE, which was not included in the AR but supplied recently, was dated in early June, 2005. CARE makes no claim that ordinary contracting procedures like Cargo Preference should be waived in the call forward. The grant agreement incorporated application of Cargo Preference. The call forward was long planned. The individual who purported to waive application of Cargo Preference lacked the authority to do so. See Plaintiff's Statement of Material Facts as to Which there is No Genuine Issue at para. 22-24, 41; AR 56, 57.

6. Admitted.

7. Denied. In the document referred to in the AR, Plaintiff America Cargo Transport, Inc. offered to transport the cargo for $298 per ton, with the vessel departing the load port on July 20, 2005 for delivery to Mombasa, Kenya on July 29/30, 2005. AR 22.

8. Denied. Global Container Lines offered to transport the cargo in containers for $65 per metric ton with an estimated time of arrival at the load port on July 23, 2005 and estimated arrival at the discharge port of August 7, 2005. AR 20.

9. – 11. Admitted.

12. Denied. Plaintiff, through its broker and attorney, applied to the Maritime Administration for informal discussions with interested parties under the informal grievance procedure in 46 C.F.R. § 381.6.

13. Denied. Defendant Maritime Administrator, through his staff, pursuant to the informal grievance procedure contacted USAID staff and, after evaluation of the facts, advised USAID staff that USAID was out of compliance with the Cargo Preference Act. AR 91, 97.

Respectfully submitted,

Timothy B. Shea

DC Bar No. 234005
Nemirow Hu & Shea
1629 K Street, NW Suite 500
Washington, DC 20036
Telephone 202-835-0300