**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN CARGO TRANSPORT, INC. )<br><br>　　Plaintiff, )<br><br>　　v. )<br><br>ANDEW S. NATSIOS, )<br>U.S. AGENCY FOR INTERNATIONAL )<br>DEVELOPMENT, )<br>and JOHN JAMIAN, ACTING )<br>MARITIME ADMINISTRATOR, )<br>DEPARTMENT OF TRANSPORTATION, )<br><br>　　Defendants. ) | Action No.: 05-1452 (RBW)<br>ECF |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

**I.   Introduction**

Plaintiff American Cargo Transport's Motion for Summary Judgment has not established that Defendants U.S. Agency for International Development ("USAID") and Maritime Administrator ("MARAD") violated the Administrative Procedure Act when USAID exercised its discretion to award a contract to a foreign vessel to deliver emergency food to Somalia under the "notwithstanding" authority provision in 22 U.S.C. § 1722(a).  As explained in Defendants' Motion for Summary Judgment and herein, USAID's use of the "notwithstanding" authority provision is consistent with the D.C. Circuit's holding in Crowley v. United States, 865 F.2d 861 (D.C. Cir. 1989).

1

Moreover, because the sorghum cargo had been delivered, Plaintiff no longer has standing to seek any relief from this Court. For these reasons, the Court should deny Plaintiff's Motion for Summary Judgment and dismiss this case with prejudice.

## II.     Argument

### A.     USAID Did Not Violate the APA.[1]

Plaintiff's Motion argues that USAID's decision to invoke the "notwithstanding" authority provision should be set aside for three reasons: (1) USAID's determination that Plaintiff's rate for shipping the sorghum cargo was exorbitant was not supported by data; (2) USAID failed to consider that MARAD actually reimburses USAID for transportation costs; and (3) USAID failed to consider that it was in arrears in the 75% tonnage requirement under the Cargo Preference Act. Pl. Opp. at 14-16.

These assertions miss the point and are irrelevant. Under the explicit statutory language of the "notwithstanding" authority provision, 22 U.S.C. § 1722(a), USAID had complete discretion to invoke this exemption – without demonstrating that it was necessary to override the Cargo Preference Act requirements – to deliver emergency food aid. The decision to invoke the "notwithstanding" authority provision is committed to USAID's discretion by law. Plaintiff has not articulated a standard by which the Court could adopt to judicially review USAID's action. This is so because one does not exist.

Under the APA, agency action is not subject to judicial review to the extent that such

---

[1]     Plaintiff's Motion for Summary Judgment fails to explain how MARAD injured Plaintiff in any way. As explained in Defendant's Motion for Summary, MARAD was sympathetic to Plaintiff's issue and, on Plaintiff's behalf, actually protested USAID's contract award to a foreign vessel. Under these facts, Plaintiff simply has not stated a claim against MARAD. Therefore, the Court should dismiss MARAD from this case with prejudice.

action "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). As the Supreme Court explained in Heckler v. Chaney, 470 U.S. 821, 830 (1985), and reiterated in Lincoln v. Vigil, 508 U.S. 182 (1993), Section 701(a)(2) mandates that "review is not to be had" in those rare circumstances where there is "no meaningful standard against which to judge the agency's exercise of discretion." Id. at 190. The Court reasoned that "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" Heckler, 470 U.S. at 830.

No judicially manageable standard exists where the "statutory standard is expressed in such general concepts that it requires and must contemplate the exercise of discretion in choice among various rational alternatives none of which can fully satisfy all demands of competing interests." Congress of Ry. Unions v. Hodgson, 326 F. Supp. 68, 73 (D.D.C. 1971). "A mere difference of judgment between a person disadvantageously affected by agency action and the responsible head of the agency over the merits of particular administrative action as a means of achieving a legislative objective, when Congress has assigned authority to make and act upon such determinations to the agency, is not judicially reviewable." Id. at 73.

In the present case, the statute at issue is drafted in such a way as to provide no judicially manageable standards. The broad language of the "notwithstanding" authority provision is clear on its face. 22 U.S.C. § 1722(a). The provision allows USAID to provide emergency foods "notwithstanding any other provision of law." Id. Indeed, the D.C. Circuit analyzed a similarly broad "notwithstanding" authority provision in Crowley Caribbean Transp. v. United States, and held that "[if] . . . the terms of the statute are clear, and no 'clearly expressed legislative intention to the contrary' is shown, then the statutory language is dispositive." 865 F.2d 1281, 1283 (D.C.

Cir. 1989). The court in Crowley also explained that to accept any other interpretation of the statute "would be to commit judicial mayhem on the statute." Id.

     Moreover, similar to the statute in Crowley, Congress did not require a determination or even a formal decision by USAID to use the "notwithstanding" authority provision under 22 U.S.C. § 1722(a). When invoked, this "notwithstanding" authority provision operates to override other when USAID provides agricultural commodities to meet emergency food needs.[2] To accept Plaintiff's suggestions that USAID must defer to MARAD's rate determination, consider the reimbursement scheme, and consider the tonnage requirement prior to invoking this provision is to impose restrictions on the statute where none exist. In fact, Plaintiff's assertions are similar to the argument advanced by the plaintiff in Crowley. In that case, plaintiff argued that USAID could invoke the "notwithstanding" authority provision in the Foreign Assistance Act only when there was a determination that using U.S.-flag vessels "would cause significant delay in providing disaster relief." Crowley, 865 F.2d at 1283. The D.C. Circuit rejected this proposed exemption and held that "such a conclusion would palpably amend the legislation to add qualifying clause[s]." Id. The D.C. Circuit then stated that it was "not authorized to edit Congress's work in this fashion." Id.[3]

---

    [2] There is no dispute that the sorghum cargo intended for Somalia was an emergency cargo. Specifically, USAID's June 9, 2005 letter to CARE indicated that USAID "agrees to donate agriculture commodities and to pay related support costs . . . to assist in financing the Emergency Proposal dated 29 March, 2005, for activities in Somalia." A.R. 27. Moreover, the call-forward request designated commodities, including sorghum, intended for Somalia as an emergency cargo. See Gov. Exh. A. Finally, Plaintiff's counsel also conceded at the TRO hearing that there is an emergency situation in Somalia. TRO Trans. at p. 22.

    [3] Plaintiff attempts to distinguish Crowley from this case by making two arguments. First, Plaintiff contends that Crowley upheld the district court decision on the pleading and did not involve a review of an administrative record. Opp. at 16. Second, Plaintiff

In sum, the language of the statute in this case is plain on its face. USAID has complete discretion on when and how to invoke this "notwithstanding" authority provision. Furthermore, USAID's interpretation and use of the "notwithstanding" authority provision does not conflict with the legislative history of this statute. More importantly, USAID's interpretation of this provision is consistent with the D.C. Circuit's reading of a similar statute in Crowley. Under these circumstances, the Court should defer to USAID on the interpretation and use of this provision. American Medical International, Inc. v. Secretary of Health, Education, and Welfare, 466 F.Supp. 605 (D.D.C. 1979) (noting that a court should recognize that because of the expertise of the Agency, the Agency's administrative decisions should be given deference). Accordingly, the Court should deny Plaintiff's Motion and dismiss this case with prejudice.

**B.      USAID Did Not Waive the Cargo Preference Act.**

Plaintiff's Motion also argues that the USAID manager who signed the memorandum authorizing the use of the "notwithstanding" authority provision did not have authority to waive the Cargo Preference Act. Pl. Mot. at 3, 10, 16. Again, this contention misses the point.

USAID did not waive the Cargo Preference Act when it invoked the "notwithstanding" authority provision. Rather, by invoking the "notwithstanding" authority, the provision renders all other law, including the Cargo Preference Act, inapplicable. The statute plainly states, "*notwithstanding any other provision of law*, the Administrator [of USAID] may provide

---

claims that the Crowley decision did not involve a challenge to the regularity of a decision invoking emergency authorities. Id. Plaintiff's assertions miss the point. The D.C. Circuit reached the conclusion in Crowley by just analyzing the plain language of the statute. The D.C. Circuit unambiguously held that, given the broad language of the "notwithstanding" authority provision, USAID could invoke it at anytime. Crowley, 865 F.2d at 1283. Under this unambiguous holding, the administrative record or the regularity challenge would not be relevant and would not alter the D.C. Circuit's conclusion.

5

agricultural commodities to meet emergency food needs . . . in such a matter and on terms and conditions as the Administrator determines appropriate to respond to the emergency." 22 U.S.C. ¶ 1722(a) (emphasis added). There was not a need for USAID to determine that it was waiving the Cargo Preference Act when invoking this provision. There is nothing in the law that requires it and the Court should not read such a requirement into the plain language of this provision. To do so would be akin to amending the statute. See Crowley, 865 F.2d at 1283.

Furthermore, Ms. Lauren Landis, the Director of Food For Peace (FFP) program, who approved the use of the "notwithstanding" authority, had the authority to invoke that provision. Under USAID's internal delegation of authority regulations, the Director of FFP has "*without limitation*, the authority to authorize, approve, negotiate, execute and implement transfer authorizations and grants, and ancillary obligation or implementation documents necessary to carry out emergency and non-emergency P.L. 480 of Title II programs." USAID's ADS § 103.3.15.3 (emphasis added) (Gov. Exh. B) (only relevant pages are attached). P.L. 480 of Title II programs are those administered by USAID to provide food aid to meet emergency humanitarian needs. See Def. Mot. at 3. Here, Ms. Landis exercised her delegated authority and invoked the "notwithstanding" authority provision in providing an emergency cargo of 2,000 metric tons of sorghum to Somalia. Accordingly, there is nothing improper about the procedure that USAID used to invoke the "notwithstanding" authority provision.

    **C.**     **Plaintiff Does Not Have Standing to Seek the Requested Relief.**

Without citing to any legal authority, Plaintiff's Motion seeks three separate kinds of relief from the Court. As a preliminary issue, the sorghum cargo arrived in Somalia in August. See Def. Mot. at 11. Given this fact, Plaintiff no longer has standing to seek any relief as the

case is moot because the Court can offer Plaintiff no other relief.  See Ali v. Gonzalez, 387 F. Supp. 2d 16, 18 (D.D.C. 2005) (noting that a case is considered moot either when the issues presented are no longer live or the parties no longer have a legally cognizable interest in the outcome).  See Def. Mot. at 11.  In any event, each of Plaintiff's three forms of requested relief is discussed below.

Plaintiff's first requested relief seeks an order declaring that USAID acted arbitrarily and capriciously when it invoked the "notwithstanding" authority provision.  Pl. Mot. at 17.  As discussed above, USAID has complete discretion in invoking the "notwithstanding" authority provision at any time.  Furthermore, since there is no judicially manageable standard by which the Court can review USAID's action, the Court should defer to USAID' action as committed to agency discretion. See Section II.A. *supra* .

Plaintiff's second relief seeks a ruling from the Court requiring USAID to defer to MARAD for fair and reasonable rate determination under Cargo Preference Act.  Id.  Plaintiff does not have standing to seek this particular relief as it does not meet the redressability element of the standing requirements.

To satisfy the irreducible constitutional minimum of standing, a plaintiff must meet three requirements.  Steel Co. v. Citizens for Better Env., 523 U.S. 83, 102-03 (1998) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  First, a plaintiff must demonstrate an injury in fact, not conjectural or hypothetical injury.  Id. at 103.  Second, a plaintiff must show causation – that an injury is fairly traceable to a defendant's conduct.  Id.  Finally, there must be redressability – a likelihood that the requested relief will redress the alleged injury.  Id.

Here, Plaintiff has not demonstrated how this Court's order requiring that USAID defer to MARAD for rate determination under the Cargo Preference Act would redress Plaintiff's injury (if one still exists).  More importantly, even if USAID gives MARAD such deference (which it does), there is nothing in the law that would prevent USAID from invoking the "notwithstanding" authority provision to deliver emergency food to address humanitarian needs. As explained above, the "notwithstanding" authority provision simply makes any other law, including the Cargo Preference Act, inapplicable.  Accordingly, even if the Court grants the requested relief, that order would be rendered meaningless once USAID invoked the "notwithstanding" authority provision.  Under these circumstances, the Court should reject Plaintiff's second requested relief because it will not redress Plaintiff's claimed injury.  See Raytheon Co. v. Ashborn Agencies, Ltd., 372 F.3d 451, 454 (D.C. Cir. 2004) (dismissing plaintiff's case for lack of standing because the relief sought by plaintiff will not redress the injury of which it complains).

Finally, Plaintiff seeks an order requiring USAID to make up in the Cargo Preference Year 2006 the deficit of 271,735 metric tons incurred during the 2005 year.  This requested relief has no merit.  As an initial matter, only 2,000 metric tons of sorghum were at issue in this case. There are no allegations that USAID or MARAD violated any law pertaining to the other 269,735 metric tons of commodities and, therefore, they are not at issue here.  Plaintiff has not provided any authority that would allow this Court to fashion a remedy over a claim not presented to it for adjudication.  More importantly, similar to Plaintiff's second requested relief, Plaintiff has not shown how such an order would redress Plaintiff's injury.  Accordingly, the Court should deny Plaintiff's requested relief for failure to meet the redressability requirement.

**III.   Conclusion**

For the foregoing reasons, the Court should deny Plaintiff's Motion for Summary Judgment because USAID did not violate the Administrative Procedure Act when it exercised its discretion to invoke the "notwithstanding" authority provision to deliver emergency food aid to Somalia.  Alternatively, the Court should simply dismiss this case as moot because the sorghum cargo at issue has been delivered and there is no longer has a live controversy for the Court to decide.

Dated: November 16, 2005.                    Respectfully Submitted,

/s/
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

/s/
R. CRAIG LAWRENCE, D.C. BAR #171538
Assistant United States Attorney

/s/
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406
Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CARGO TRANSPORT, INC.,  )<br><br>         Plaintiff,  )<br><br>         v.  )<br><br>ANDEW S. NATSIOS,  )<br>U.S. AGENCY FOR INTERNATIONAL  )<br>DEVELOPMENT,  )<br>and JOHN JAMIAN, ACTING  )<br>MARITIME ADMINISTRATOR,  )<br>DEPARTMENT OF TRANSPORTATION,  )<br><br>         Defendants.  ) | Action No.: 05-1452 (RBW)<br>ECF |

**[PROPOSED] ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Upon consideration of Plaintiff's Motion for Summary Judgment, Defendants' Opposition thereto, and the entire record herein, it is this_____ day of _____, 2005,

ORDERED that Plaintiff's Motion for Summary Judgment be and is hereby DENIED; and it is

SO ORDERED.

_____
U.S. District Judge