UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA CARGO TRANSPORT, INC. | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No.: 05-1452 (RBW) ) |
| ANDEW S. NATSIOS, U.S. AGENCY FOR INTERNATIONAL DEVELOPMENT, and JOHN JAMIAN, ACTING MARITIME ADMINISTRATOR, DEPARTMENT OF TRANSPORTATION, | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The express rationale for the USAID decision has been so thoroughly undermined that the Government does not even defend it: the Maritime Administration ("Marad") found Plaintiff's rate to be fair and reasonable; the ocean freight differential is reimbursed to USAID; any savings under the CARE grant would not be recognized this year but at the end of the grant term in 2006; and USAID was well aware the it was short of the requirement to carry at least 75% of the Title II program on US-flag vessels.

The USAID election to invoke the authorities "to override compliance with the cargo preference rules" "[d]ue to the extreme price disparity" between America Cargo Transport's ("ACT") "exorbitant" US-flag rate and the foreign offer is entirely vitiated by

1

the Marad determination of reasonableness. Compare Affidavit of Denise Scherl dated July 25, 2005 at para. 9, Exhibit B to Government Motion for Summary Judgment and Administrative Record ("AR") at 07 with Defendant's Response to Plaintiff's Statement of Material Fact as to Which There is No Genuine Issue at para. 40, 41 and AR 100- 102. The stated purpose of the action, to avoid paying the higher U.S.-flag rate to preserve "Title II resources available to the Agency to address critical food needs this year," AR at 07, was equally inaccurate: amounts not expended under the grant to CARE over amounts budgeted in the grant would not be realized until the end of the grant in April 2006; and in any event, Marad reimbursed USAID for the ocean freight differential. See Defendants' Response to Plaintiff's Statement of Material Facts as to Which there is No Genuine Issue at para 11, 12 and 23.[1]

I.    **The USAID Decision is Judicially Reviewable**

Defendants, perhaps prudently, have retreated to the position that the decision of USAID to waive cargo preference is judicially unreviewable because, it is claimed, Plaintiff has not articulated a standard which the Court could adopt to judicially review USAID's action. Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Opposition") at 2. Nothing could be further from the truth.

---

[1] Defendants have acknowledged that Marad reimburses USAID for ocean freight differential but suggest that the precise amount of the reimbursement does not affect the outcome of the case under governing law. See Defendants' Response to Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue at para. 11 and 12. This mere argument, which falls short of the requirement of Rule 7(h) of the Local Rules for a separate and concise statement of genuine issues with references in the record relied upon, must be taken as a recognition that the reimbursement amount is not in dispute.

First, "[v]ery rarely has Congress withheld judicial review from those who have suffered an Article III injury at the hands of an administrative agency." *PDK Laboratories Inc. v. U.S. Drug Enforcement Agency*, 362 F.3d 786, 788 (D.C. Cir 2004) citing *Bowen v. Michigan Academy of Family Physicians*, 467 U.S. 667, 670-671 (1986) and *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967).

Second, it is a bedrock principle of administrative law that courts review the stated rationale for the decision and cannot sustain an action on some other rationale. *SEC v. Chanery*, 332 U.S. 194, 200 (1947); *Van Dyke v. NTSB*, 286 F.3d 594 (D.C. Cir. 2002). Normally, an agency action would be arbitrary and capricious if the agency has relied on factors which the Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *Motor Vehicle Mfrs. Assoc. v. State Farm Mutual Auto. Ins.*, 463 U.S. 29, 43 (1983).

The assertion that the rate offered by ACT was "exorbitant" is a perfectly ordinary decision that can bear judicial scrutiny quite well, particularly with the benefit of the Marad rule and guideline rate calculation in the record. Far more elaborate rate decisions are subject to judicial review. *Burlington Northern & Santa Fe Ry. v. Surface Transportation Board*, 403 F.3d 771 (D.C. Cir. 2005) (reviewing coal rate description); *Beethoven.com LLC v. Librarian of Congress*, 394 F.3d 939 (D.C. Cir. 2005) (reviewing copyright license rates); *BP W. Coast Prods. LLC v. FERC*, 374 F.3d 1263 (D.C. Cir 2004). Moreover, the argument advanced by the Government is essentially the same as that rejected by the Circuit Court in *Rainbow Navigation Inc. v. Department of the Navy*,

783 F.2d 1072 (D.C. Cir. 1986). In that case, which arose under the Cargo Preference Act of 1904, 10 U.S.C. § 2631 ("1904 Act"), the Government had rejected a freight rate of a US-flag vessel operator as "excessive or otherwise unreasonable" to mollify the Government of Iceland and vessels of its national flag. After determining that the Marad fair and reasonable rate rules applied to military cargoes covered by the 1904 Act, the court concluded"[w]e find that there is a 'meaningful standard,' *Heckler v. Chaney*, 105 S.Ct. at 1655 – the standard of reasonable profit, *American Maritime Association*, 766 F.2d at 549 – that we can and must apply to review of the Secretary's action." *Id*. at 1080. Based on the lack of any evidence, the court set aside the agency decision as "utterly lacking" in factual demonstration that the US-flag carrier was making anything more than a reasonable profit. The court continued:

> The manner of the Navy's action in this case was extraordinary, giving Rainbow no opportunity to examine and, if possible, correct the factual finding of "excessive or otherwise unreasonable" rates on which termination of its preference was based. Perhaps the Secretary [of Defense] would have proceeded differently if he had not been relying primarily on the military and foreign policy considerations which he thought could justify his finding under the "excessive and unreasonable" proviso, and which in his view would overcome whatever economic showing Rainbow might have made.

*Id.* at 1081. Here too, USAID's procedures were every bit as extraordinary.

*Heckler* and its progeny, which presume enforcement actions to be immune from review, are unavailing to Defendant's for the additional reason that no enforcement decision was made. USAID has no enforcement authority for cargo preference whatsoever; rather, USAID is the regulated entity. Under the *Heckler* rubric, USAID is arguing that it literally has the authority to exempt itself from cargo preference.

Finally, "even when 'it is impossible [for a court] to evaluate agency action for abuse of discretion' (as to those factors on which the agency has relied that are peculiarly within its competence), *Chaney*, 470 U.S. at 830, the court can – and must – review the agency's decision to determine that the agency has acted 'within the scope of [its] authority,' … and did not rely on 'factors that Congress has not intended it to consider.'" *Farmworkers Justice Fund, Inc. v. Brock*, 811 F.2d 613, 622 (D.C. Cir 1987) (internal citations omitted) citing *Motor Vehicle Manufacturers Assn. v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43 (1983)."*Heckler v. Chaney* does not bar judicial review of agency decisionmaking to determine whether the agency relied on statutorily 'impermissible or irrelevant factors.'" *Id*. citing *Robbins v Reagan*, 780 F.2d 37, 48 (D.C. Cir 1985) (per curiam). Here, the branding of ACT's rate as exorbitant, without authority or support, constituted an impermissible and irrelevant factor to trigger a claim of emergency.

### II.     The decision in *Crowley* does not Govern this Case

Defendants misapprehend the scope of the decision in *Crowley Caribbean Transport v. United States*, 685 F.2d 1281 (D.C. Cir. 1989) by suggesting that the case addresses the propriety of invoking the authorities. The case arose out of a Congressional appropriation of $50 million to assist victims of an earthquake in El Salvador under USAID's International Development and Disaster Assistance Program authorized in Chapter 32 of Title 22 U.S.C. The emergency nature of the grant in the activity was never questioned in *Crowley* and the Title II program and authorities were not implicated. The

5

sole question for the court was the legal effect of the emergency authorities after they had been properly invoked.

Here, by contrast, the grant to CARE and the specific tender terms contemplated application of cargo preference. Plaintiff's rate was the triggering event for the agency action. Defendants' contention would mean that the Court has no authority to review, for instance, the authority of the person invoking the emergency and the rationale for any claim of emergency. Those contentions, which Defendants acknowledge to be issues that must be dealt with, demonstrate that USAID must make a threshold showing of the regularity of invoking these authorities. See *Heckler* at 830 (court may review whether agency acted within its authority).

### III. The Decisionmaker Lacked the Requisite Authority to Take the Action.

Defendants contend that the decisionmaker in USAID was authorized to take the action in so far as the decision did not waive the application of cargo preference, but invoked emergency authorities under Title II.

To begin with, the decision memorandum contains no reference to the delegation of authority to the decisionmaker. AR at 08. The avowed purpose of the memorandum was to memorialize the election to "override compliance" with cargo preference rules. AR at 07.

Section 103.3.8.3. of USAID's Automated Directives System ("ADS") grants to the Associate Administrator for Management of USAID authority to waive transportation source requirements for ocean transportation services. Subparagraph (c) of that provision

6

prohibits redelegation of the authorities except for limited exceptions unrelated to these purposes. ADS Section 10 3.3.15.3, upon which Defendants rely, grants to the Director, Food for Progress, authority to administer the Title II program generally.  Defendants rely on general grant of authority to administer Title II program as a source of authority for invoking the override provisions.  Quite clearly, though, the text of the decision memorandum states that USAID was overriding compliance with cargo preference. Applying the general maxim that the more specific governs the more general, see, e.g., *Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir 1997), waiver of the cargo preference having been reserved to the Assistant Administrator for Management, that is the proper official of USAID that must approve this action.

Accordingly, the decision of USAID "to override compliance with cargo preference rules," AR 07, was unauthorized.

IV.     **Plaintiff, as a Party Adversely Affected by the Action, has Standing to Seek Redress for this Action as Arbitrary, Capricious, an Abuse of Discretion and Not in Accordance with Law**

Defendants enlarge their contention that the case is moot by urging that the Plaintiff lacked the requisite standing to seek a ruling from the Court requiring USAID to defer to Marad for fair and reasonable rate determinations under the Cargo Preference Act.  Defendants contend that even if USAID gives Marad such deference, "there is nothing in the law what would prevent USAID from invoking the 'notwithstanding' authority" in circumstances it deems appropriate." Defendants' Opposition at 8.

There is no doubt that Plaintiff is a party adversely affected by the decision of USAID – the agency resorted to waiver authorities to reject ACT's rate. It certainly

7

satisfies the standard injury-in-fact and APA terms. In *Crowley* and *Rainbow Navigation* the courts addressed the merits without any expression of concern about similar threshold constitutional issues.

Defendants suggest that the request that Defendant USAID be ordered to defer to Marad's rate determinations fails the redressability element of the standing requirement. There can be little doubt that the failure of USAID to defer to Marad's rate determination was fundamental to the USAID decision here – the decision was premised on the assertion that the rate was "exorbitant." USAID can readily avoid such errors in the future by deferring to Marad on rate determinations.

A favorable ruling for Plaintiff would deter USAID from rejecting US-flag rates out of sheer pique without consulting with Marad and without responding to the carrier. In that vein, it is surprising that USAID now claims that it defers to Marad for fair and reasonable rate determinations. No hint of such deference can be found in this record of USAID deliberations or in the decision memorandum: no note of Marad or its role in passing on freight rates is ever made. If USAID had deferred to the Marad rate determination in this case, then the decision memorandum would have been fundamentally different if it were created at all. For that very reason, of course, the relief sought from this Court will be important to Plaintiff and any other US-flag carrier subject to the same threat of unilateral rejection.

Nothing in this challenge or Plaintiff's proposed order would prevent USAID from invoking emergency authorities to deliver food to address emergency humanitarian needs provided that such basic niceties as a rational basis for the decision and a properly authorized decisionmaker are attendant.

Finally, Defendants object to Plaintiff's request for relief that USAID make up in the cargo preference year 2006 the deficit of 271,735 metric tons incurred during the 2005 year pointing out that only 2000 metric tons of sorghum were at issue in this case. Defendants understate the issue. There is no dispute that USAID is required to carry at least 75% of the Title II tonnage on US-flag vessels. See, e.g., AR at 07. Marad, the official scorekeeper, has documented that USAID was in a substantial deficit in the 2005 cargo preference year – 8.8% or 271,735 tons below the required minimum percentage for US-flag vessels.   The very idea that USAID would confect an "emergency" to avoid reasonable US-flag rates for a mere 2000 tons when the program was in a deficit for the year speaks volumes about how the program was administered. It is axiomatic that "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Education*, 402 U.S. 1, 15 (1971).

The claim that make up of cargo may be limited to US-flag carriers that can point to specific cargoes denied them would stand the burden on its head. It was up to USAID to run its program to meet the minimum percentage and the fact that USAID is required to meet the percentage for the program as a whole gives it some discretion as to where it may use non-US carriers during the year. Thus, the Court need only consider that the failure to meet the required 75% minimum rests with USAID. Alternatively, the Court could, after notice to the US-flag industry, set down individualized hearings in which US-flag carriers that come forward with threshold showings of lost cargo opportunities in the

9

2005 accounting year would be presumed entitled to relief absent a clear and convincing showing from USAID. See, e.g., *Hartman v. Duffey*, 19 F.3d 1459, 1462 at n. 2 (D.C. Cir. 1994) (describing "Teamsters" hearings on individual complaints of discrimination after finding of class liability).

**V.    Conclusion**

      Judgment must be entered for Plaintiff and against Defendants in accord with Plaintiff's proposed order.

                                            Respectfully submitted,

                                            Timothy B. Shea

                                            DC Bar No. 234005
                                            Nemirow Hu & Shea
                                            1629 K Street, NW Suite 500
                                            Washington, DC 20036
                                            Telephone 202-835-0300